[No. 13180.   Department One.   August 25, 1916.]

STATE BOARD OF MEDICAL EXAMINERS, *Respondent*, v.
KATHRYN M. HARRISON, *Appellant*.[1]

PHYSICIANS AND SURGEONS—REGULATION—REVOCATION OF LICENSE —POWERS OF LEGISLATURE—CONCLUSIVE EVIDENCE—STATUTES.   The legislature, in making it the duty of the state board of medical examiners to revoke a practitioner's license for unprofessional conduct, under Rem. & Bal. Code, § 8397, had the power to declare (by Id., § 8397½) that the conviction of any offense involving moral turpitude shall be conclusive evidence of unprofessional conduct, whether the same be a rule of law or a rule of evidence; hence the statute is not unconstitutional and the board could not go back of the record of conviction.

SAME—REVOCATION OF LICENSE—STATUTES—VALIDITY.   The term "moral turpitude" in such act is not so vague and uncertain as to render the law unconstitutional.

SAME.   Statutes regulating the practice of medicine are within the police power of the state and not violative of any constitutional provision.

Appeal from a judgment of the superior court for King county, Albertson, J., entered July 7, 1915, upon sustaining a demurrer to the answer, affirming upon appeal an order

[1]Reported in 159 Pac. 769.

of the state medical board in revoking appellant's license to practice medicine as an osteopath.   Affirmed.

*Dudley G. Wooten*, for appellant.

*The Attorney General* and *Howard Waterman, Assistant*, for respondent.

MOUNT, J.—This appeal is from a judgment of the superior court affirming an order of the state board of medical examiners, which order revoked the license of the appellant to practice medicine as an osteopath within this state.

It appears that a complaint was filed with the board of medical examiners, which complaint charged that the appellant had been convicted of an offense involving moral turpitude, in this, that she was indicted and convicted in the United States district court at Seattle, for "knowingly, by means of the United States mail, giving notice and information" to certain persons named, "when, how, and by whom and by what means an abortion could and would be done and performed and produced." Reference is made to the indictment as part of the complaint.

To this complaint before the state board of medical examiners, an answer was filed by the appellant, admitting the conviction referred to, but she denied that she had, at any time or place or by any means, given information of how, when or by whom an abortion could be produced; denied that she had been given a fair trial in the Federal court; denied that she had ever been guilty of any offense involving moral turpitude; and denied that the board could justly revoke her license without inquiring into the truth of the transactions involved in the indictment and the manner in which she was tried and convicted.

As an affirmative defense, she described at length the facts and circumstances of her trial and conviction in the Federal court, to the effect that her indictment was produced by the use of decoy letters and collusive methods, by the

prejudice of the Federal court and the jury, and the prose-
cuting attorney; that she was not ready for trial at the time
her case was tried; that her attorney was appointed by the
court and was not familiar with her case; that the indict-
ment stated no offense involving moral turpitude and should
have been quashed in the Federal court; and that the charge
in the Federal court was unsupported at the trial.

She also pleaded that she had expiated her conviction by
serving out her sentence in jail; that she was of good moral
character, personally and professionally; that she was a
graduate in osteopathy and licensed as a practitioner; that
she is wholly dependent upon her profession for a living and
maintenance.

When the case came on for hearing before the state board
of medical examiners upon the complaint and answer as
above epitomized, a motion was made to strike out the af-
firmative defenses.  This motion was sustained, and the ap-
pellant was adjudged guilty of unprofessional conduct as
charged.  The board thereupon revoked her license.  The
appellant then appealed to the superior court.  In the su-
perior court, a demurrer was filed to the affirmative defense
set up in the answer.  This demurrer was sustained, and a
judgment of affirmance was entered upon the admission that
she had been convicted in the Federal court.

The appellant makes a number of assignments of error.
The principal one upon which she relies is that the statute
defining unprofessional conduct and making the conviction of
an offense involving moral turpitude conclusive evidence is
unconstitutional and void.

The statute provides at § 8397, Rem. & Bal. Code, that,

"Whenever any holder of a certificate herein provided for
is guilty of unprofessional conduct, as the same is defined
in this chapter, and said unprofessional conduct has been
brought to the attention of the board granting said certifi-
cates, in the manner hereinafter pointed out  .  .  .  it shall
be their duty to, and they must, revoke the same at once,

and the holder of said certificate shall not be permitted to practice medicine and surgery, or osteopathy . . . in this state."

Section 8397½ provides that:

"The words 'unprofessional conduct', as used in this chapter, are hereby declared to mean:

"First.   The procuring, or aiding or abetting in procuring a criminal abortion.   .   .   .

"Fifth.   Conviction of any offense involving moral turpitude, in which case the record of such conviction shall be conclusive evidence.   .   .   ."

The appellant contends that the provision that a conviction of any offense involving moral turpitude shall be conclusive evidence is void, unless it shall be construed to mean that the state board of medical examiners or the courts may inquire into the facts and circumstances attending such former conviction for the purpose of ascertaining if the offense for which the person was so convicted is one involving moral turpitude.

The appellant contends that this provision is a rule of evidence and not of substantive law; and from that it is argued, if we understand her contention, that it is the duty of the court to hear the evidence and determine as a question of fact, irrespective of the former conviction, whether the accused is really guilty of an offense involving moral turpitude.

It is true that in the case of *State Medical Examining Board v. Stewart*, 46 Wash. 79, 89 Pac. 475, 123 Am. St. 915, 11 L. R. A. (N. S.) 557, in discussing the question whether the statute of limitations could be pleaded in bar in a case of this kind, we said:

"The statute, therefore, constitutes a rule of evidence in such cases, to which the statute of limitations does not apply."

But whether the statute under consideration is a declaration of substantive law or a rule of evidence is of no im-

portance, for we are satisfied that the legislature has the power to declare either a rule of law or a rule of evidence in a case of this kind.

The appellant apparently relies upon a discussion of the power of the legislature to interfere with judicial powers by Mr. Wigmore in his work on evidence, vol. 2, at § 1353, and following. But that authority, after such discussion, says:

"Assuming, though, that conclusiveness cannot constitutionally be attributed by the legislature to any testimonial evidence as such, there still remain two apparent exceptions, in which conclusiveness can lawfully be created under some circumstances; one is the finding of an *inferior court* and the other is the finding of an *executive officer* within his province of action." Id., § 1354.

That authority conceded the power of the legislature to make the judgment of an inferior court or an executive officer conclusive of the facts found by such court or officer.

In the note to *Hewitt v. State Board of Medical Examiners*, 7 Am. & Eng. Ann. Cas. 750 (148 Cal. 590, 84 Pac. 39), at page 752, the author of the note, after citing the principal case, where it was determined that the words "grossly unprofessional conduct of a character likely to deceive or defraud the public" were held to be invalid, then said:

"The weight of authority, however, seems to be in favor of the validity of such statutes. Thus statutes empowering certain boards to revoke the licenses of physicians who are guilty of unprofessional and dishonorable conduct, or of immoral conduct or habits, or of intemperance, or of a felony, have been held to be valid as a reasonable exercise of the police power, and not in violation of any provision of the constitution. The courts have held generally that the acts of such boards in the exercise of this power are not judicial. *Spurgeon v. Rhodes* (Ind. 1906), 78 N. E. 228; *Meffert v. State Board of Medical Registration, etc.*, 66 Kan. 710, 72 Pac. Rep. 247, *affirmed*, 195 U. S. 625, 25 U. S. Sup. Ct. Rep. 790; *State v. State Board of Medical Examiners*, 34 Minn. 387, 26 N. W. Rep. 123; *Matter of Smith*, 10 Wend.

(N. Y.) 449; *State Board of Health v. Roy,* 22 R. I. 538, 48 Atl. 802; see also *State v. State Board of Medical Examiners,* 34 Minn. 391, 26 N. W. Rep. 125. In *Meffert v. State Board of Medical Registration, etc.,* 66 Kan. 710, 72 Pac. Rep. 247, the court said: 'The revocation of a license to practice medicine for any of the reasons mentioned in the statute was not intended to be nor does it operate as a punishment, but as a protection to the citizens of the state. Such requirements go to his qualifications; and where the qualification imposed is reasonable, one has no right to complain that he is deprived of the right to practice his profession because he has not conformed to such reasonable regulations.' "

The appellant also cites the case of *Ex parte Mason,* 29 Ore. 18, 43 Pac. 651, as holding that the court should go behind the record of conviction and determine the facts upon which such conviction was based. As we read that case, the court held that, in order to determine the penalty, the court might inquire into the facts upon which the conviction was based, for it was there said:

"The defendant has been convicted of a misdemeanor, and, as has been shown, one involving moral turpitude. The record of his conviction is made conclusive evidence thereof, so that the production of such record established his guilt in the disbarment proceedings. The court may, however, go behind the record for the purpose of determining upon the extent of severity of the punishment to be administered . . . Here the penalty is removal or suspension, with full discretion as to which shall be adopted, and, if the latter, then as to the duration and limitation thereof. So we look behind the record here for the purpose only of determining the punishment that should be inflicted."

In the case at bar, there is no discretion, either in the state board of medical examiners, or in the court, as to the penalty. The statute provides, as quoted above, that it shall be the duty of the board to revoke the license to practice medicine in the state. That is the only penalty.

In the *Stewart* case, *supra,* we said:

"A conviction of any offense involving moral turpitude is made conclusive evidence of unprofessional conduct. It is

not contemplated by the statute that the examining board shall try the accused and find him guilty of an offense involving moral turpitude when there has already been a trial and conviction. Such former conviction by a court of competent jurisdiction is conclusive evidence of the moral character and professional conduct of the accused at the time the charge is made against him."

We are satisfied, therefore, that the legislature had the power and authority to pass the statute under consideration, and that it was the duty of the state board of medical examiners when the conviction was admitted, to cancel the appellant's certificate.

It is also argued by the appellant that the term "moral turpitude," as used in the statute, is so vague and uncertain as to render the law unreasonable and void. Those words are capable of accurate definition and are well understood, as we so determined in *In re Hopkins*, 54 Wash. 569, 103 Pac. 805.

That the statutes relating to the practice of medicine within the state are within the police power of the legislature, and are not in violation of any constitutional provision, has been frequently decided by this and other courts in numerous cases. *State v. Carey*, 4 Wash. 424, 30 Pac. 729; *State ex rel. Smith v. Board of Dental Examiners*, 31 Wash. 492, 72 Pac. 110; *State Medical Examining Board v. Stewart, supra; Hawker v. People of New York*, 170 U. S. 189.

We find no merit in the appeal, and the judgment is therefore affirmed.

MORRIS, C. J., FULLERTON, and ELLIS, JJ., concur.