[Civil No. 3762. Filed March 29, 1937.]

[66 Pac. (2d) 1026.]

CLAUDE EMERSON DU VALL, Appellant, v.
BOARD OF MEDICAL EXAMINERS OF ARI-
ZONA, and I. E. HUFFMAN, J. H. PATTER-
SON, JOHN E. BACON, W. G. SCHULTZ and
CHARLES C. BRADBURY, as Members of the
Board of Medical Examiners of Arizona, Ap-
pellees.

330

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellant.

Mr. John L. Sullivan, Attorney General, Mr. A. I. Winsett, Assistant Attorney General, for Appellees.

ROSS, J.—This is an appeal from a judgment in a *certiorari* proceeding wherein the superior court of Maricopa county affirmed an order of the Board of Medical Examiners of Arizona revoking the license of Claude Emerson Du Vall to practice medicine in Arizona. The charges against Du Vall, and on which the revocation of the medical board was based, were as follows:

"Before the Board of Medical Examiners of the State of Arizona

"In the Matter of the Revocation of the Certificate of Claude Emerson Du Vall, M. D. } Complaint.

"Comes now Nadine Meredith and for complaint against Claude Emerson Du Vall alleges as follows:

"I. That said Claude Emerson Du Vall has been guilty of unprofessional conduct as a physician and surgeon of the State of Arizona, in that prior to the filing of this complaint, he dispensed, prescribed by prescription or sold drugs for other than medical purposes to a person who was an habitual user of such drugs without any intent or purpose to cure said habitual user of the use of said drugs; that said conduct on the part of said Claude Emerson Du Vall is contrary to the ethics and professional conduct of a physician and surgeon and the laws of the State of Arizona and the United States of America.

"II. That Claude Emerson Du Vall was charged with a violation of the provisions of Section 696, Title 26, United States Code [now 26 U. S. C. A., § 1044 and note] a provision of what is known as the Harrison Narcotic Act, by indictment consisting of two counts of the Federal Grand Jury in and for the District of Arizona, and was convicted on said charge by a jury on the 29th day of June, 1935, on both counts contained in said indictment; and that thereafter on July 1, 1935, the United States District Court, in and for the District of Arizona, sentenced said Claude Emerson Du Vall to serve fourteen months in prison on each count, the sentences to run concurrently and in addition thereto assessed a fine against him of Five Hundred ($500.00) Dollars on each count; that the record of said charge and conviction may be found in the office of the Clerk in and for the District of Arizona, at Tucson, Arizona, under the name and style of *United States of America* v. *Claude Emerson Du Vall,* No. C–7287–Tucson; that the charge and offense on which said Claude Emerson Du Vall was convicted was one involving moral turpitude and that by reason of the conviction of said charge, said Claude Emerson Du Vall is guilty of unprofessional conduct as the same is defined by Section 2559, Revised Code of Arizona, 1928."

Du Vall was cited to answer the charges, and on October 3, 1935, he appeared with his counsel before the board, whereupon a hearing was had. At the hearing the prosecution introduced both oral and documentary evidence in support of the charges. The re-

spondent did not testify nor did he introduce any evidence, but did object to all of the evidence on the ground that the charges failed to state any statutory ground authorizing the medical board to revoke his license.

Section 2556, Revised Code of 1928, empowers the medical board to issue licenses to practice medicine in the state. Section 2559, Id., provides that, if an applicant for a certificate to practice medicine has been guilty of unprofessional conduct, the board shall refuse to license him, but that the board shall give him a hearing before such refusal. Such section also provides, with reference to the revocation of a certificate to practice, as follows:

"Whenever a holder of a certificate is guilty of unprofessional conduct, or whenever a certificate has been procured by fraud or misrepresentation, or issued by mistake, the board shall revoke the same after citation and hearing thereon. The secretary shall certify the fact of revocation, under the seal of the board, to the county recorder of the county in which the revoked certificate had been recorded; and said recorder must thereupon indorse upon the margin or across the face of his register of the certificate the fact of such revocation. From the time of the revocation of a certificate the holder thereof shall be disqualified from practicing.

"The words 'unprofessional conduct' shall include the procuring, or aiding or abetting in procuring a criminal abortion; the wilful betrayal of a professional secret; all advertising of medical business which is intended, or has a tendency, to deceive the public or impose upon credulous or ignorant persons, and so be harmful or injurious to the public morals or safety; all advertising of any medicine or of any means whereby the monthly periods of women can be regulated or the menses reestablished if suppressed; conviction of any offense involving moral turpitude, in which case the record of such conviction shall be conclusive evidence; habitual intemperance in the use of alcohol or nar-

cotic drugs; and the personation of another licensed. practitioner of a like or different name.''

The extent of the power of the court to review upon *certiorari* is limited to a determination of the question as to whether the inferior tribunal, board, or officer has regularly pursued the authority of such tribunal, board, or officer; in other words, to a determination as to whether the tribunal, board, or officer has exceeded its jurisdiction. Sections 4391, 4394, Rev. Code 1928; *In re Farish,* 18 Ariz. 298, 158 Pac. 845. If it appears that the facts stated in the complaint against Du Vall were sufficient to confer jurisdiction upon the medical board to proceed to a hearing, and that a hearing was had at which he was given an opportunity to present his defense, errors and irregularities in the proceedings and in the medical board's conclusion may not be reviewed on *certiorari.* While the complaint should state a statutory ground or grounds as cause for revoking a license to practice, it is not necessary that the complaint set forth such ground or grounds with the preciseness and particularity observed in an indictment or information or perhaps in a complaint in a civil action. The proceedings before the board are more or less informal. If the accusation is sufficient to advise the party charged of the nature and character of the charges so that he may prepare himself to defend thereon, it is sufficient.

Appellant says the first count of the complaint is insufficient both in fact and in law. He contends that conduct or acts authorizing the revocation of his license must be one of the several kinds enumerated in section 2559, *supra;* in other words, that the statutory definition of ''unprofessional conduct'' is exclusive and that what he is charged with doing in count 1 does not fall within such definitions. He also contends that, if what is charged in said count be admitted to be true,

it would not constitute unprofessional or unethical conduct, since it does not appear therefrom that the "drugs" dispensed, prescribed, or sold were of the habit-forming kind, such as morphine, cocaine, etc., or that such drugs were destructive to health or character. It seems to us that the last criticism is justified and that count 1 should be rejected as not being sufficient either in law or fact. In this view of count 1 it becomes unnecessary to decide whether the statutory definition of "unprofessional conduct" is exclusive or not.

While count 2 is awkwardly phrased, we think it sufficiently advised the defendant of the charge against him. His conviction and sentence for violating the Harrison Narcotic Act (as amended, 26 U. S. C. A., §§ 1040–1054, 1383–1391), as alleged in count 2 was not controverted. In fact, he urged before the medical board that its proceeding should be abated pending the determination of his appeal before the United States Circuit Court of Appeals of the Ninth Circuit. The question then is, Does a conviction of a regularly licensed physician under the Harrison Narcotic Act involve moral turpitude? The Harrison Narcotic Act is a revenue act and not an act to regulate the sale and disposition of narcotics, or to regulate the practice of medicine. The Congress, under the federal Constitution, has power to levy a tax upon narcotics and their sale, but the states have not delegated to the United States the power to regulate such sales and to punish therefor, or to regulate the practice of medicine. The constitutionality of the Harrison Narcotic Act has been upheld only on the ground that it was the exercise of the taxing power. *Linder* v. *United States,* 268 U. S. 5, 45 Sup. Ct. 446, 69 L. Ed. 819, 39 A. L. R. 229; *United States* v. *Doremus,* 249 U. S. 86, 39 Sup. Ct. 214, 63 L. Ed. 493; *Du Vall* v. *United States,* (C. C. A.) 82 Fed. (2d) 382, *certiorari* denied 298 U. S.

667, 56 Sup. Ct. 751, 80 L. Ed. 1391; *United States* v. *Anthony*, (D. C.) 15 Fed. Supp. 553. In practically all the cases it is stated that, while the Harrison Narcotic Act has a moral end, it is incidental and accomplished only through the revenue features of the act. One federal court has said of the Harrison Narcotic Act:

"The act is ostensibly a revenue measure, and within limits the courts must recognize it as such. At the same time any one with sense enough to be at large without a keeper knows the revenue feature, which possibly returns cents for dollars spent in administration, is but a fiction and device to enable Congress, otherwise disabled to suppress opium traffic and use, to hinder and obstruct such traffic and use so far as may be done incidental to exercise of revenue power." *United States* v. *Parsons*, (D. C.) 261 Fed. 223.

It will be noted that the medical board is directed to revoke a physician's certificate to practice after citation and hearing thereon, provided he is found guilty of unprofessional conduct, and that "conviction of any offense involving moral turpitude" shall be authority for such revocation. The conviction and the record relied upon by the medical board were in the federal court. The statute makes the conviction and the record thereof conclusive that the crime therein charged was committed but such record is not made conclusive that the crime involved moral turpitude. It is for the court to determine that question. *In re Dampier*, 46 Idaho 195, 267 Pac. 452, 454; *State Board of Medical Examiners* v. *Harrison*, 92 Wash. 577, 159 Pac. 769; *In re Liliopoulos*, 175 Wash. 338, 27 Pac. (2d) 691.

Just what crimes involve moral turpitude is not always easy to say. Generally speaking, those crimes that are *malum in se* involve moral turpitude while those that are *malum prohibitum* do not. But this is not always so. For instance, assault and bat-

tery is *malum in se* but rarely involves moral turpitude, while the sale or dispensing or prescribing of narcotic drugs, except for medicinal use and under strict surveillance, does involve, as we think, moral turpitude, although *malum prohibitum* only. One of the great evils of the day is the consumption of narcotic drugs. Because so many persons become addicts, most of the states, if not all of them, have enacted laws restricting the right to dispense or prescribe such drugs to registered pharmacists and physicians for medicinal purposes only and inflicting very severe penalties for their violation. While the United States under the principles of police power cannot take control of narcotic drugs and regulate their disposition and use, it has under the taxing power made the traffic in such drugs more difficult.

Mr. Newell, in his work on Slander and Libel, fourth edition, section 32, says:

"Moral turpitude may therefore be defined as an act of baseness, vileness, or depravity in the private and social duties which a man owes to his fellow-men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man."

If there is anyone who is to be pitied, it is the addict of habit-forming drugs of the narcotic kind. He is usually a hopeless loss to society. Not only that, but he is a real menace. He will do most anything to secure the drug to satisfy his cravings and under its influence commit most desperate crimes. No one knows this better than the members of the medical profession, bound by their honor and the Hippocratic oath to the highest ideals in their relation to society and especially those seeking their advice and help. When one of these has been convicted of violating the Harrison Narcotic Act, we think it safe to say he is guilty of "an act of baseness . . . contrary to the accepted and customary rule of right and duty be-

tween man and man'' as manifested by legislation by most of the states and the United States and by common consent.

*United States ex rel. Andreacchi* v. *Curran,* (D. C.) 38 Fed. (2d) 498, 499, is the only case cited that is directly in point. The court there was passing upon section 19 of the Immigration Act of February 5, 1917, (8 U. S. C. A., § 155), which authorized the deportation of any alien who had been sentenced more than once for crimes involving moral turpitude, and it was there held that, inasmuch as ''The crime [against the Harrison Narcotic Act] consists not in engaging in narcotic traffic, but in merely failing to register, pay a tax and comply with certain regulations of the Internal Revenue Commissioner,'' and inasmuch as ''a person might be punishable under the . . . Act and not be guilty of moral turpitude, as, for instance, where there is a failure to comply with it, not because of any intention to furnish addicts with narcotics, but merely because of an oversight or lack of information regarding the statute,'' a conviction thereunder did not involve moral turpitude. While the court states the crime against the United States consists in failure to register, pay a tax, and comply with regulations, yet it must be obvious that these omissions are innocuous in the absence of narcotic traffic. ''Oversight or lack of information regarding the statute'' (narcotic statute), if ignorance of the law ever excuses, would come with poor grace from a registered and licensed physician, under a duty and an obligation to know the law, both state and national, governing the dispensing of narcotic drugs.

It seems to us the possibility of a convicted defendant being free from willful and wrongful intent is indeed very remote. Take the present case. The indictment upon which appellant was tried charges him with making, on the same day, two separate sales to

one Pat Rooney, an addict, one for four grains of morphine and the other for three, not in the course of his professional practice only and not in pursuance of a written order to the addict on a blank for that purpose provided by the Commissioner of Internal Revenue. How could it be said that a physician who would do what is charged here is of good moral character, or that he is not prostituting his high profession for material gain? After a trial and conviction he appealed and his conviction was affirmed. *Du Vall* v. *United States, supra.*

The quality of the act for which one may be convicted under the Harrison Narcotic Act, confessedly a taxing measure, is not different when the act is made a crime under the police power of the state. The act remains vile, debasing and dishonorable. No right-thinking person would suggest that kidnaping under the Lindbergh Act (18 U. S. C. A., §§ 408a–408c), or larceny under the Dyer Act (18 U. S. C. A., § 408), or the commercializing of women under the Mann Act (18 U. S. C. A., §§ 397–404), is not *malum in se* involving moral turpitude, although enacted by the Congress under the interstate commerce clause of the federal Constitution.

 *In re Dampier, supra,* the court said:

"The expression 'moral turpitude' is susceptible of more than one interpretation. A crime might be held to involve moral turpitude, when gauged by the public morals of one community, and in another community the same offense would not be so considered. The Supreme Court of Pennsylvania, in *Beck* v. *Stitzel,* 21 Pa. 522, 524, said that:

" 'This element of moral turpitude is necessarily adaptive; for it is itself defined by the state of public morals, and thus far fits the action to be at all times accommodated to the common sense of the community.' *Ex parte Mason,* 29 Or. 18, 43 Pac. 651, 54 Am. St. Rep. 772; *Matter of Coffey,* 123 Cal. 522, 56 Pac. 448; *In*

*re Kirby,* 10 S. D. 322 [414], 73 N. W. 92, 907, 39 L. R. A. 856, 859; Newell on Slander and Libel, 78.

"Moral turpitude has a more definite meaning in the statute law. Generally speaking, crimes *malum in se* involve moral turpitude."

That was a disbarment proceeding, the charge being that the respondent had been convicted in the United States District Court of "sending obscene or non-mailable matter" through the mails, a crime involving moral turpitude. It was there held that, since the meaning of moral turpitude shifts and fluctuates in keeping with changes in view of the moral standards of the people or country, it should be gauged by the laws of the state and not the United States. It seems reasonable that the legislature, when it provided that a physician's license should be revoked when he is convicted of a crime involving moral turpitude, must have meant as measured by our standards of policy and morality as found in our laws. It appears the rule is reasonable and inevitable. At the time appellant was charged with having violated the Harrison Narcotic Act, the same act under our law was a felony, punishable by a fine of not less than fifty nor more than one thousand dollars or by confinement in the penitentiary for not more than five years, or both. Section 10, chap. 36, Laws of 1931. The natural inference is stated as follows:

"So we must say that those things which are discountenanced and regarded as evil and accordingly forbidden by society are immoral and that the doing of them contrary to the sentiment of society thus expressed involves moral turpitude, and this regardless of the punishment imposed for their doing." *State* v. *Malusky,* 59 N. D. 501, 230 N. W. 735, 738, 71 A. L. R. 190.

The proceeding before the medical board to revoke a license is not criminal and does not require

that every doubt, as in a purely criminal case, be resolved in favor of the innocence of the licensee. We think a conviction under the Harrison Narcotic Act negatives any and all presumptions of good faith on the part of the defendant and brands him as a person of bad moral character, unfit to practice medicine. Because of the appropriateness of the language in *Hawker* v. *State of New York,* 170 U. S. 189, 18 Sup. Ct. 573, 576, 42 L. Ed. 1002, we quote as follows:

"It is not, as a rule, the good people who commit crime. When the legislature declares that whoever has violated the criminal laws of the state shall be deemed lacking in good moral character, it is not laying down an arbitrary or fanciful rule, one having no relation to the subject-matter, but is only appealing to a well-recognized fact of human experience; and, if it may make a violation of criminal law a test of bad character, what more conclusive evidence of the fact of such violation can there be than a conviction duly had in one of the courts of the state? The conviction is, as between the state and the defendant, an adjudication of the fact. So, if the legislature enacts that one who has been convicted of crime shall no longer engage in the practice of medicine, it is simply applying the doctrine of *res judicata,* and invoking the conclusive adjudication of the fact that the man has violated the criminal law, and is presumptively, therefore, a man of such bad character as to render it unsafe to trust the lives and health of citizens to his care."

It is contended by appellant that the order revoking his certificate is void in that it fails to "show the facts essential to the jurisdiction of the board making it." The order, omitting formal parts, reads:

"The said Board having fully considered the evidence here to for (*sic*) submitted, and being fully advised in the premesises (*sic*) find (*sic*) as follows:

"That the said respondent Dr. Claude Emerson Du Voll (*sic*) has been found guilty of unprofessional conduct, therefore the Board by unaminous (*sic*) vote

here by (*sic*) revokes the license of the said respondent Dr. Claude Emerson DuVoll (*sic*)."

In support of his contention he cites *Blunt* v. *Shepardson,* 286 Ill. 84, 121 N. E. 263, in which case the whole proceeding was in parol and the order of revocation gave no reason for the revocation. The court very properly held the proceeding void. What was done in that case was very different from the situation here. Appellant Du Vall was formally charged with unprofessional conduct and one of the charges was uncontrovertibly proved, in fact it was admitted. He was given a formal hearing and found guilty of unprofessional conduct. While the order does not state the particular cause for the revocation of his license, and is not one of which the board should be very proud, reference to the record makes it very definite that it was based upon his conviction of a crime involving moral turpitude.

The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.