326 So.2d 231 (1976)
William E. RICHARDSON, Petitioner,
v.
FLORIDA STATE BOARD OF DENTISTRY, Respondent.
No. Z-205.
District Court of Appeal of Florida, First District.
February 5, 1976.
*232 W.N. Avera, Chandler, O'Neal, Avera, Gray, Lang & Stripling, Gainesville, for petitioner.
L. Haldane Taylor, Taylor & Brecher, Jacksonville, for respondent.
SMITH, Judge.
Dr. Richardson, A DeLand dentist, seeks review of an order of the State Board of Dental Examiners suspending him from the practice of dentistry for six months because of the manner in which he obtained and used a narcotic drug in his practice. The authority of the Board is derived from § 466.25, F.S. 1973. The matter was heard, as provided in the Administrative Procedure Act, ch. 120, F.S. 1973 (1974 Supp.), by a hearing officer of the Division of Administrative Hearings, Department of Administration. The Board of Dental Examiners, acting on a recommended order of the hearing officer [§ 120.57(1)10], found that Dr. Richardson had committed felonies in the third degree proscribed by ch. 893, F.S. 1973, and thereby had been guilty of "conduct of a nature to bring discredit upon the dental profession." A dental license may be revoked or suspended under § 466.24(3)(a), F.S. 1973, if the holder
"(3) Has been guilty of:
(a) Misconduct either in his business or in his personal affairs which would *233 bring discredit upon the dental profession; ..."
Dr. Richardson asserts that the quoted statute is unconstitutionally vague in its description of proscribed "misconduct" and, consequently, that a suspension order cannot be predicated on it. The parties have not referred to and we have not found an appellate judicial decision in Florida or elsewhere evaluating a statute precisely like this one. Throughout the country, however, there are similar professional licensing statutes. Other Florida statutes proscribe "conduct reflecting unfavorably" on the veterinary profession and "conduct unbecoming" a physical therapist. Secs. 474.31(13), 486.091(7), F.S. 1973.
We agree with the numerous decisions of other courts upholding, against substantive due process attacks, professional licensing standards couched in similarly general terms. "Misconduct" justifying suspension or revocation of a professional license includes acts done in persistent disregard of the law, those which are malum in se [Davis v. State ex. rel. Florida State Board of Dental Exam., 181 So.2d 559 (Fla.App.1st, 1966), cert. den., 188 So.2d 818 (Fla. 1966); Russ v. Pepper, 190 So.2d 783 (Fla.App.3d, 1966)], and those which offend generally accepted standards of conduct within the profession, thereby jeopardizing the interests of the profession and the public it serves. Ladrey v. Comm'n on Licensure to Practice, 104 U.S.App.D.C. 239, 261 F.2d 68 (1958), cert. den. 358 U.S. 920, 79 S.Ct. 288, 3 L.Ed.2d 239 (1959) ("misconduct"); Arizona State Board of Med. Exam. v. Clark, 97 Ariz. 205, 398 P.2d 908 (1965) ("unprofessional conduct"); In re Mintz, 233 Or. 441, 378 P.2d 945 (1963) ("unprofessional or dishonorable conduct"); Bell v. Board of Regents, etc., 295 N.Y. 101, 65 N.E.2d 184 (1946), reh. den., 295 N.Y. 821, 66 N.E.2d 590 (1946) ("unprofessional or immoral conduct"). Contra, Matthews v. Murphy, 23 K.L.R. 750, 63 S.W. 785 (Ky. 1901).
Our difficulty in dealing with the Board's suspension of Dr. Richardson results from uncertainty over the standard of misconduct invoked by the Board. The Board does not charge that Dr. Richardson violated professional ethical standards and there is no proof of a generally accepted ethical standard by which his conduct may be condemned. Nor does the Board contend that Dr. Richardson's conduct was self-evidently evil. While the formal accusation on which the proceedings rest did not charge that Dr. Richardson violated any law, the order proposed by the hearing officer and adopted by the Board found that Dr. Richardson committed felonies in the third degree in violation of § 893.13(3)(a), F.S. 1973, providing:
"(3)(a) It is unlawful for any person:
"1. To acquire or obtain, or attempt to acquire or obtain, possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge."
Although the order of suspension rather clearly predicates its critical findings on Dr. Richardson's presumed violation of § 893.13(3)(a),[1] the Board's counsel asks us to disregard as surplusage all references in the order to § 893.13 and to supposed felonies. Putting aside momentarily this confusion over the standard by which Dr. Richardson's conduct is to be judged, we turn to the accusations, the evidence and the findings.
Counts two through six of the accusation charge that, on five occasions, Dr. Richardson *234 wrote a prescription for morphine sulfate in the name and for the use of one of his patients but, after obtaining the drug from a local pharmacy, did not dispense the drug to the named patient. Count seven charges that, on ten documented occasions, Dr. Richardson obtained morphine sulfate from a pharmacy by writing a prescription in the name of Karen Lambdin, his chairside assistant, "for the alleged use of Karen Lambdin," but that Dr. Richardson did not dispense the drug to Karen Lambdin. The drug, it was charged, was not necessary to the proper practice of dentistry. The Board found, on recommendation of the hearing officer:
"(1) During the period between July, 1973, and April 2, 1974, William E. Richardson issued numerous prescriptions for 20 cc vials of morphine sulfate in the names of persons for whom the medication was not intended nor used.
"(2) From January 30, 1974, until April 2, 1974, eleven such prescriptions issued were picked up by Karen Lambdin and paid for by Richardson's office.
"(3) Those prescriptions in paragraph (2) above issued in the names of John Kaeserman, Nancy Siler, Flora Munk, Mary Byrne, and Karen Lambdin were not used in the course of dental treatment of any of those named."
Morphine sulfate is a narcotic drug subject to the controls imposed by ch. 893, F.S. 1973, and 21 U.S.C. §§ 801 et seq. Its power for good and ill is formidable. Injecting just one-half of one cc of it into mouth tissues, Dr. Richardson vowed, will relax and buoy the spirits of an apprehensive dental patient, thus making a complex procedure easier for the dentist and less unpleasant for the patient. Until this controversy arose, Dr. Richardson preferred this drug over all others for that purpose. Although the record makes clear that Dr. Richardson used morphine sulfate when most other dentists prefer a less potent or nonnarcotic drug, or none at all, there is in this record no hint of criticism that Dr. Richardson's use of the drug was unnecessary or improper in the practice of dentistry.[2]
Practitioners ordinarily obtain controlled substances such as morphine sulfate for office use by ordering it from licensed distributors which are required by law to distribute such substances to practitioners, pharmacists and others only pursuant to a written order on a form approved by State and Federal governments. Sec. 893.06(1), F.S. 1973; 21 U.S.C. § 828. Dr. Richardson thought it inconvenient to supply his needs for morphine sulfate by submitting government forms to distributors because, he said, it was practical in that way only to order larger quantities of the drug than he desired to keep in the office. Dr. Richardson felt that keeping any amount of morphine sulfate in the office beyond the end of the day encouraged repeated break-ins.
So Dr. Richardson became accustomed to obtaining small quantities of morphine sulfate  the smallest available vial containing 20 cc's and costing approximately $1.20  by sending his assistant to a pharmacy with a prescription form on which Dr. Richardson had written "for office use only" instead of a patient's name. Eventually, however, the pharmacists advised Dr. Richardson that a patient's name was required to be written on the face of the prescription. Federal law excepts a dispensing pharmacist from the requirements applicable to a distributor of controlled substances only when the pharmacist dispenses, on the prescription of a practitioner, to "an ultimate user" of the drug. 21 U.S.C. §§ 802(10), 828. And State law requires that prescriptions bear the "full name and address of the person for whom ... *235 the controlled substance is dispensed." § 893.04(1)(c)1, F.S. 1973. Dr. Richardson obliged by writing on the prescription form the name of John Kaeserman or Nancy Siler or some other patient having an appointment on the day of the purchase, to whom Dr. Richardson expected to administer a small amount of the drug in the manner and for the purpose already described.
Having thus administered one-half of one cc of the drug to the patient named in the prescription and on the label, Dr. Richardson would use other small doses during the day on any other appropriate patients and, at the end of the day, pour what remained in the vial down the drain. In the case of John Kaeserman, a patient for whom morphine sulfate was so obtained on the day of his appointment, Dr. Richardson decided that the patient did not need the drug. So he did not inject it needlessly, nor did he give the patient the full vial to carry home. He used as many small doses from the vial as other patients required during the day, then destroyed the balance.
On ten occasions shown by the evidence in support of the accusation in count seven, Dr. Richardson wrote prescriptions for morphine sulfate in the name of Karen Lambdin, his chairside assistant, and dispatched her to a pharmacy to pick up the drug. His purpose was not to administer the drug to Ms. Lambdin, of course, but rather to use it on appropriate patients expected that day. Mr. West, the only pharmacist whose testimony was adduced by the Board and who filled seven of the ten "Lambdin" prescriptions and three of the others, knew Karen Lambdin as Dr. Richardson's assistant from her visits to the pharmacy and from his visits to the office of Dr. Richardson, whose patient he was. There was no evidence whatsoever that Mr. West or any other pharmacist who filled a "Lambdin" prescription was misled by the manner of purchase to believe that Dr. Richardson intended to administer the drug in any quantities to his chairside assistant. Three of those prescription forms stated on their face "PRN [as needed] in office" or "PRN office use." Others stated "PRN by Dr." and "PRN by Drs. orders." Pharmacist West thought it was "unusual" for Dr. Richardson to be ordering the drug by means of prescriptions rather than on a "regular narcotic form," and so asked Ms. Lambdin, on one occasion, what the drug was being used for. She replied truthfully.
Our responsibility under the Administrative Procedure Act, ch. 120, F.S., is to set aside agency action which "is not supported by competent substantial evidence in the record." Sec. 120.68(10), F.S. 1973 (1974 Supp.). We have scoured the record for evidence supporting the Board's finding, on counts two through six, that Dr. Richardson issued prescriptions for "morphine sulfate in the names of persons for whom the medication was not intended nor used." There is no evidence that Dr. Richardson issued prescriptions in the names of Mary Byrne, John Kaeserman, Helen McKiver, Flora Monk and Nancy Siler intending not to administer the drug to those patients. With the sole exception of John Kaeserman (count three), there is no evidence in the record that Dr. Richardson did not administer the drug to the named patients. As to that count, it is incomprehensible that the Board of Dentistry would consider it offensive to the standards of the profession that a dentist in good faith might order a drug for a patient but not administer it on finding the patient did not require it. The Board's findings and conclusions in respect to counts two through six are without support in the record and they will be set aside.
The Board's findings of fact in support of count seven, pertaining to the "Lambdin" prescriptions, have greater support in the record. Dr. Richardson was aware that a prescription for a narcotic or any other drug is an order to the pharmacist to dispense it directly to the ultimate user or to one in his household. We would not find on this record that Dr. Richardson *236 violated the law by writing prescriptions for patients to whom he intended to administer the drug and then sending his assistant to obtain the drug for the patient; but, with respect to the "Lambdin" prescriptions, he clearly knew that he was circumventing proper procedures for obtaining morphine sulfate.
We revert now to the request of the Board's counsel that we disregard the Board's finding that Dr. Richardson committed a felony by obtaining possession of morphine sulfate by "misrepresentation, fraud, forgery, deception or subterfuge," in violation of § 893.13(3)(a), F.S. 1973. There is no evidence justifying such a finding, which will therefore be set aside.
Taken as a whole, however, the evidence and the findings of the Board show that Dr. Richardson knew of the lawful procedures for obtaining and using a highly controlled drug, found himself inconvenienced by those procedures and deliberately and persistently circumvented them. As a result, records required by law to be made concerning drug acquisition and use were not made and kept by Dr. Richardson.
Dr. Richardson evidently deservedly enjoys a good reputation for patient care. He was motivated in these circumstances only to serve his patients. Nevertheless, his conduct offends State and Federal law, encourages carelessness if not permissiveness in the observance of drug control and, ultimately, reflects discredit on a profession which is and must be trusted to adhere scrupulously to drug control laws. There was no moral turpitude in his misconduct, however, and no intent to conceal.
The harsh penalty imposed by the Board is not justified in this case. The Board's suspension of Dr. Richardson for six months was influenced by erroneous findings of fact, an erroneous conclusion of law and an unwarranted comparison of this case with Du Vall v. Board of Medical Examiners, 49 Ariz. 329, 66 P.2d 1026 (1937), and Seitz v. Ohio State Medical Board, 24 Ohio App. 154, 157 N.E. 304 (1926), in which practitioners were found guilty of grossly immoral conduct in selling narcotics to addicts for purposes other than cure.
We are satisfied that the Board of Dental Examiners, on review of this matter in light of our opinion limiting and defining Dr. Richardson's misconduct, will competently assess his attitude toward his lawful responsibilities and, within appropriate limits, impose discipline appropriate to the misconduct as we have found it. The matter will be remanded to the Board of Dental Examiners for imposition of discipline not exceeding a public reprimand and license suspension for thirty days.
The petition for certiorari is granted, the order reviewed is set aside and the cause remanded.
BOYER, C.J., and MILLS, J., concur.
NOTES
[1] "It is concluded that, as a matter of law, violations of those provisions of Chapter 893, Florida Statutes, designated as felonies of the third degree, constitute conduct of a nature to bring discredit upon the dental profession. It is therefore hereby ORDERED AND ADJUDGED that William E. Richardson, D.D.S., ... be found guilty of Counts II through VII. It is further ORDERED AND ADJUDGED that William E. Richardson, D.D.S., be suspended from the practice of dentistry for a period of six (6) months... ."
[2] We thereby dispose of the Board charge in each count, made most explicit in count 7, that the administration of morphine sulfate is "not necessary to the proper practice of dentistry" and, by reverse implication, a violation of § 466.22, F.S. 1973, which permits dentists to prescribe drugs "as may be necessary to the proper practice of dentistry."