494 P.2d 54

**CITY COURT OF the CITY of TUCSON, County of Pima, State of Arizona, and Charles C. Gatewood, Magistrate of the City of Tucson, City Court, Appellants,**

**v.**

**Mari Teresa LEE et al., Appellees.**

**No. 2 CA–CIV 1112.**

Court of Appeals of Arizona, Division 2.

Feb. 29, 1972.

Rehearing Denied March 28, 1972.

Review Denied April 25, 1972.

Any person entertaining or performing any dance or in any play, exhibition, show or other entertainment, or any person serving food or spirituous liquors as defined by Title 4, Chapter 1, Article 1, Arizona Revised Statutes, 1956, as amended, in a restaurant, nightclub, bar, cabaret, tavern, tap room, theater, or in a private, fraternal, social, golf or country club, as defined by Title 4, Chapter 1, Article 1, Arizona Revised Statutes, 1956, as amended, or in any public place, who appears clothed, costumed, unclothed or uncostumed in such a manner that the lower part of his or her torso, consisting of the private parts or anal cleft or cleavage of the buttocks, is not covered by a fully opaque material or is so thinly covered as to appear uncovered, is guilty of a misdemeanor. (Ord. No. 3053, § 1, 10–16–67)

Sec. 11–25.4. Operation of restaurants, etc. where certain dancers, etc. fail to meet certain clothing requirements deemed misdemeanor.

A person who knowingly conducts, maintains, owns, manages, operates or furnishes any restaurant, nightclub, bar, cabaret, tavern, tap room, theater, or any place serving food or spirituous liquors, as defined by Title 4, Chapter 1, Article 1, Arizona Revised Statutes, 1956, as amended, or a private, fraternal, social, golf or country club, as defined by Title 4, Chapter 1, Article 1, Arizona Revised Statutes, 1956, as amended, or any public place, where any person appears clothed, costumed, unclothed or uncostumed in such a manner that the lower part of his or her torso, consisting of the private parts or anal cleft or cleavage of the buttocks, is not covered by a fully opaque material or is so thinly covered as to appear uncovered, is guilty of a misdemeanor. (Ord. No. 3053, § 1, 10–16–67)"

The maximum penalty for violating either of the above ordinances is a $300 fine, imprisonment for not more than six months, or both.

Herbert E. Williams, Tucson City Atty. by William E. Hildebrandt, Asst. City Atty., Tucson, for appellants.

Messing, Hirsh & Franklin by Robert J. Hirsh, and John O. Franklin, Tucson, for appellees.

HOWARD, Judge.

This is an appeal from a judgment of the superior court in a special action wherein the court ordered the appellants to grant appellees a jury trial.

The appellees were charged with violating the following ordinances of the City of Tucson:

"Sec. 11–25.3. Clothing requirements of certain dancers, etc.

Appellants contend that A.R.S. § 22–425, subsec. A prohibits a jury trial in the instant case and that, in any event, a constitutional right to a jury trial does not apply to petty offenses. This statute reads:

"A. In the trial of offenses for violation of ordinances of cities or towns of such a nature as by the common law were not triable before a jury, no jury trial shall be granted."

Appellants contend that since the conduct proscribed by the city ordinances was not triable at common law, the city magistrate had no authority to grant a jury trial and the superior court therefore had no authority to order him to do so.

The United States Supreme Court in Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) held that the states must grant a jury trial for serious offenses and that crimes carrying possible penalties up to six months' imprisonment do not require a jury trial if they otherwise qualify as petty offenses.

It is notable that the Court in *Duncan* did not set a mechanical standard as to which crimes were petty crimes and not triable by jury. Indeed, the Court stated that it did not have to settle the exact location of the line between petty offenses and serious crimes. We see in A.R.S. § 22–425, subsec. A an attempt by the legislature to set such a mechanical line. The issue then is whether an offense is not triable by jury merely because of the fact that it was not triable by jury at common law.

Frankfurter and Corcoran, in Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury, 39 Harvard Law Review 917 (1926), traced the historical development influencing the concept of what constitutes a "petty" offense. The article surveys legal history of offenses handled in a summary fashion in England and in the American Colonies. The authors stress that the historical genesis of the right to jury trial should be a major guide in the interpretation of the Sixth Amendment of the Constitution.

The article by Frankfurter and Corcoran, however, has not been without criticism. As one legal scholar noted:

"If that practice [the English practice of dealing with petty offenses summarily] proves anything at all in this connection, it proves too much. For as Frankfurter and Corcoran point out, summary trials in England were not restricted to such crimes [petty offenses]." Kaye, Petty Offenders Have No Peers, 26 University of Chicago Law Review, 245, 247 (1959) (footnotes omitted).

As Frankfurter and Corcoran point out, summary trials in England were not restricted to "petty offenses." For example, 22 & 23 Car. 2, c. 7 (1670), punished without jury trial, the burning of "any Ricks or Stacks of Corn, Hay or Grain, Barns, or other Houses or Buildings or Kilns" at night with transportation to the Colonies for seven years, and made the offense a felony. Blackstone was even moved to comment upon the constantly increasing scope of summary jurisdiction, lamenting that it "has of late been so far extended, as, if a check be not timely given, to threaten the disuse of our admirable and truly English trial by jury, unless only in capital cases." 4 Blackstone, Commentaries 278.

We agree with the statement of the Supreme Court of Alaska in Baker v. City of Fairbanks, 471 P.2d 386 (Alaska 1970) to the effect that one looking only to the past will find a jumble of offenses with no coherent, rational principle by which one can determine the line between what is a petty and serious crime. We think it is notable that our own Supreme Court, in the case of Rothweiler v. Superior Court, 100 Ariz. 37, 410 P.2d 479 (1966), when considering whether or not a jury trial was available in a case involving a violation of a state statute, held that in determining whether a crime is a petty offense that constitutionally may be tried without a jury, the severity of the penalty, as well as the moral quality of the act and its relation to common law crimes

must be considered. It would be anomalous to hold that the standard set forth in *Rothweiler* applies only to violations of state statutes and not to violations of city ordinances.

In applying the Rothweiler standard to the case at hand, we have no difficulty in arriving at a conclusion that violations of the ordinances in question are triable by jury.

Appellees maintain that the ordinances involved are "clothing" ordinances involving no moral turpitude. We do not agree.

Again applying the Rothweiler standard, we find that a violation of the above ordinances involves moral turpitude and is related to the common law offense of indecent exposure. The exhibition of one's private parts in a public place constitutes the crime of indecent exposure, an offense which was indictable at common law. Truet v. State, 3 Ala.App. 114, 57 So. 512 (1912); State v. Walter, 2 Marv. 444, 43 A. 253 (Del.Gen.Sess.1895). This is exactly the type of act which is prohibited by the ordinances in question. Indecent exposure is not merely *malum prohibitum* but is *malum in se*. Truet v. State, supra. Its tendency is to outrage decency and corrupt public morals. Rex v. Crunden, 2 Camp. 89, 170 Eng.Rep. 1091 (N.P. 1809). Indecent exposure has been said to. be merely a form of obscene exhibition, 2 Turner, Russell on Crime 1430 (12th ed. 1964) and comes under the head of what Hawkins and Blackstone call "open and grossly scandalous lewdness." Among offenses against God and religion, says Hawkins, is "[a]ll open lewdness grossly scandalous; such as was that of those persons who exposed themselves naked to the people in a balcony in Covent Garden with most abominable circumstances." 1 Hawkins P.C. 358 (Curwood ed. 1824). Generally speaking those crimes that are *malum in se* involve moral turpitude. Du Vall v. Board of Medical Examiners, 49 Ariz. 329, 66 P.2d 1026 (1937).

Moral turpitude is an act of depravity and baseness. O'Neill v. Mangum, 103 Ariz. 484, 445 P.2d 843 (1968); Du Vall v. Board of Medical Examiners, supra. We believe the ordinances with which we are here concerned involve moral turpitude. Appellees contend that O'Neill v. Mangum, supra, requires the moral turpitude to be *"serious"* *moral turpitude*. We do not agree since we are unable to distinguish between a little bit of depravity and baseness and a great deal of depravity and baseness.

We conclude by recognizing that our Supreme Court in State v. Cousins, 97 Ariz. 105, 397 P.2d 217 (1964) held that violation of a city ordinance proscribing drunk and disorderly conduct was not triable by jury at common law and therefore not triable by jury in the city court. We believe, however, that the holding in *Cousins* has been qualified to some extent by Rothweiler v. Superior Court, supra. In the O'Neill case our Supreme Court looked at the moral quality of the act of drunk and disorderly conduct in order to decide whether or not there was a right to a jury trial for violation of a state statute proscribing drunk and disorderly conduct. As we have previously stated, it would indeed be anomalous to hold that one who violates a state statute which may be triable in the city or justice court and which statute did not involve an offense triable by jury at common law, would be entitled to a jury trial if the moral quality of the act were such as to make it a serious offense, whereas violation of a city ordinance involving moral turpitude would not entitle a person to a jury trial, simply because of the fact that it was not triable by jury at common law. We believe the test laid down by our Supreme Court in Rothweiler v. Superior Court, supra, applies to all criminal offenses, whether they consist of violation of a city ordinance or the violation of a state statute.

Affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.