161 P.3d 577

Erin CROWELL, Petitioner/Appellant,

v.

Honorable Orest JEJNA, Scottsdale City Court Judge, Respondent Judge,

Scottsdale City Prosecutor's Office, Real Party in Interest/Appellee.

No. 1 CA–CV 06–0430.

Court of Appeals of Arizona, Division 1, Department A.

June 21, 2007.

Law Offices of Neal W. Bassett, By Neal W. Bassett, Phoenix, Laurie A. Herman Attorney at Law, By Laurie A. Herman, Ballecer & Segal LLP, By Natalee Segal, Scottsdale, Attorneys for Petitioner/Appellant.

Deborah Robberson, Scottsdale City Attorney, By Kenneth M. Flint, Assistant City Prosecutor, Scottsdale, Attorneys for Real Party in Interest/Appellee.

Law Offices of O. Joseph Chornenky, P.C., By O. Joseph Chornenky, Phoenix, Weston, Garrou, DeWitt & Walters, By John H. Weston, G. Randall Garrou, Los Angeles, Attorneys for Amici.

## OPINION

JOHNSEN, Judge.

¶ 1 Appellant Erin Crowell dances in what the Scottsdale City Code calls an "adult service business." Crowell is alleged to have violated three ordinances that forbid "adult service providers" from performing without a permit, forbid "adult service providers" from performing less than three feet from a "patron" and forbid a "patron" from placing "any money on the person or in or on the costume" of a performer. Crowell argues the Arizona Constitution guarantees her a jury trial on these offenses and appeals from the superior court's denial of her special action. For the reasons set forth below, we hold that Crowell is not entitled to a jury trial and therefore affirm the superior court's order remanding the case for a bench trial.

## BACKGROUND

¶ 2 Crowell was cited for violating Scottsdale City Code ("S.C.C." or "Code") sections 16–242(a) and 16–247(d), (*l* ). Each of the cited offenses is a class one misdemeanor punishable by either a fine up to $2,500 or no more than six months' imprisonment. S.C.C. § 16–257(a).

¶ 3 Each of the three code provisions Crowell is accused of violating applies to "providers" of any "adult service," which the Code defines as

> dancing, service of food or beverages, modeling, posing, wrestling, singing, reading, talking or listening, or other performances or activities conducted for any consideration in an adult service business by a person who is nude during all or part of the time that the person is providing the service.

S.C.C. § 16–237.[1] Crowell was cited for violating S.C.C. § 16–242(a), which states, "A person may not work as an adult service provider unless the person has first obtained an adult service provider permit under this article." [2] She also was cited for violating S.C.C. § 16–247(d), which states:

> A person may not provide an adult service in an adult service business except upon a stage elevated at least eighteen (18) inches above floor level. All parts of the stage, or a clearly designated area thereof within which the adult service is provided, shall be a distance of at least three (3) feet from all parts of a clearly designated area in which patrons may be present. The stage or designated area thereof shall be separated from the area in which patrons may be located by a barrier or railing the top of which is at least three (3) feet above floor level. A provider or patron may not extend any part of his or her body over or beyond the barrier or railing.

Finally, Crowell was cited for violating S.C.C. § 16–247(*l* ), which states, "A patron may not place any money on the person or in or on the costume of an adult service provider while the adult service provider is nude."

¶ 4 After the Scottsdale City Court denied Crowell's request for a jury trial, Crowell filed a special action pursuant to Arizona Rules of Procedure for Special Actions 1 and 4. The superior court accepted jurisdiction but denied relief. This appeal followed.

## DISCUSSION

¶ 5 "If the superior court accepts jurisdiction and determines the merits of a special-action petition, we review whether the court abused its discretion by its grant or denial of relief. Because eligibility for a jury trial is a question of law, however, we independently determine the merits" of such a request. *Ottaway v. Smith*, 210 Ariz. 490, 492, ¶ 5, 113 P.3d 1247, 1249 (App.2005) (citations omitted).

¶ 6 To determine whether a defendant is entitled to a jury trial under our state constitution, we apply a two-step analysis. *Derendal v. Griffith*, 209 Ariz. 416, 425, ¶¶ 36–37, 104 P.3d 147, 156 (2005) (overruling *Rothweiler v. Superior Court*, 100 Ariz. 37, 410 P.2d 479 (1966)); *see Fushek v. State of Arizona*, 215 Ariz. 274, 276, ¶¶ 6–7, 159 P.3d 584, 586 (App.2007). The analysis is in two steps because "[t]wo separate provisions of the Arizona Constitution secure the right to jury trial for certain criminal defendants." *Derendal*, 209 Ariz. at 419, ¶ 7, 104 P.3d at 150.

¶ 7 Article 2, Section 23, of the Arizona Constitution provides that "[t]he right of trial by jury shall remain inviolate." To decide whether a defendant has a right to a jury trial under this provision, we must determine whether the offense of which the defendant is accused "has a common law

---

1. The Code defines "nude" as "without opaque non-flesh colored fabric fully covering the genitals, pubic hair, vulva, mons veneris, anus, cleft of the buttocks, the areola, and the part of the female breast directly below the areola." S.C.C. § 16–237.

2. Pursuant to S.C.C. § 16–242(b), to obtain a permit, an applicant must provide his or her "full true name" and any stage names used in the preceding five years, address and phone number, written proof of age, and certain information about prior sexually oriented permits and drug or sex criminal charges, complaints or indictments.

antecedent that guaranteed a right to trial by jury at the time of Arizona statehood." *Derendal,* 209 Ariz. at 425, ¶ 36, 104 P.3d at 156. We apply this analysis because Section 23 does not create a right to trial by jury; instead, it preserves whatever "right that existed at common law prior to statehood." Hon. George T. Anagnost, *Trial by Jury and "Common Law" Antecedents,* Ariz. Att'y, Nov. 2007, at 38, 39; *see Derendal,* 209 Ariz. at 419, ¶ 8, 104 P.3d at 150.[3]

¶ 8 If no jury trial right is found within Section 23, we turn to Article 2, Section 24, of the Arizona Constitution, which provides that "[i]n criminal prosecutions, the accused shall have the right to ... a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed." Because Section 24 is Arizona's "analog to the Sixth Amendment," we follow decisions of the United States Supreme Court in analyzing the "seriousness" of the offense to determine whether a jury must be offered. *Derendal,* 209 Ariz. at 425, ¶ 37, 104 P.3d at 156 (discussing *Blanton v. City of N. Las Vegas,* 489 U.S. 538, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989)); *see Fushek,* 215 Ariz. at 276, ¶ 7, 159 P.3d at 586. Under this analysis, we presume that no jury right attaches if the lawmaker has defined the offense to be a misdemeanor punishable by no more than six months' incarceration. *Derendal,* 209 Ariz. at 425, ¶ 37, 104 P.3d at 156. "A defendant may rebut this presumption, however, by demonstrating that the offense carries additional severe, direct, uniformly applied, statutory consequences that reflect the legislature's judgment that the offense is serious." *Id.*

¶ 9 As noted, the offenses of which Crowell is accused all carry separate penalties of no more than six months in jail. Crowell does not contend that the ordinances carry additional consequences that might render them so serious as to warrant a jury trial pursuant

to Article 2, Section 24, of the Arizona Constitution. Accordingly, the issue is whether, under Section 23 of the constitution, the charged offenses have a "common law antecedent that guaranteed a right to trial by jury at the time of Arizona statehood." *Id.* at 425, ¶ 36, 104 P.3d at 156.

¶ 10 In determining whether there is a common-law, jury-eligible antecedent to a modern offense, we compare the character of the modern offense with that of the common-law offense. *Id.* at 419, ¶ 10, 104 P.3d at 150 ("We have further held that when the right to jury trial for an offense existed prior to statehood, it cannot be denied for modern statutory offenses of the same 'character or grade.'" (quoting *Bowden v. Nugent,* 26 Ariz. 485, 488, 226 P. 549, 550 (1924))).

¶ 11 The court in *Derendal* cited several cases as examples of modern crimes with common-law antecedents. *Id.* at 419–20 & n. 4, ¶¶ 11–12, 104 P.3d at 150–51 & n. 4. In *Bowden,* "a defendant charged with operating a poker game in violation of a city ordinance was entitled to a jury trial because the charge was similar in character to the common law crime of conducting or maintaining a gambling house and the elements of the crimes were substantially similar." *Id.* at ¶ 11, 104 P.3d 147 (citing *Bowden,* 26 Ariz. at 490, 226 P. at 550). Likewise, in *Urs v. Maricopa County Attorney's Office,* a charge of reckless driving, defined as "driv[ing] a vehicle in reckless disregard for the safety of persons or property," was similarly akin in "character" to the common-law offense of "operating a motor vehicle so as to endanger [any] property [or] individual." *Id.* at 420, ¶ 12, 104 P.3d at 151 (alterations in original) (discussing *Urs,* 201 Ariz. 71, 74, ¶ 10, 31 P.3d 845, 848 (App.2001)).

¶ 12 The court also cited with apparent approval the case of *City Court v. Lee,* 16 Ariz.App. 449, 452, 494 P.2d 54, 57 (1972),

---

**3.** *Cf.* Felix Frankfurter & Thomas G. Corcoran, *Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury,* 39 Harv. L.Rev. 917, 921 (1926) (in interpreting similar reservation of jury trial right under the United States Constitution, "we are not dealing with abstract declarations about 'the rights of man' but with the preservation of concrete institutions, the details

of which, because of their familiarity, were taken for granted and not defined by the framers"). After surveying trial records from pre-and post-revolutionary days, the authors of this article concluded generally that the jury-trial guaranty under Article III was reserved for serious, non-petty, offenses. *See, e.g., id.* at 970.

which held that a defendant charged with violating a city ordinance prohibiting all-nude dancing was entitled to be tried by a jury. 209 Ariz. at 420 n. 4, ¶ 12, 104 P.3d at 151 n. 4. The *Derendal* court observed that the common-law offense of indecent exposure was "a direct antecedent" of the city ordinance at issue. *Id.* (citing *Lee*, 16 Ariz.App. at 452, 494 P.2d at 57).[4]

■ ¶ 13 In determining whether the offenses at issue in this case share the character of a common-law antecedent, we focus on the elements of the offenses. "We regard a jury-eligible, common law offense as an antecedent of a modern statutory offense when the modern offense contains elements comparable to those found in the common law offense." *Id.* at 419, ¶ 10, 104 P.3d at 150; *see id.* at 420, ¶ 11, 104 P.3d at 151 (noting that elements of the modern crime in *Bowden* were "substantially similar" to the historical offense).

■ ¶ 14 Crowell argues that, like the Tucson ordinance at issue in *Lee*, the Scottsdale City Code provisions she is accused of violating have as their common-law antecedent the crime of indecent exposure, entitling her to a jury trial. She contends, and Scottsdale does not deny, that one charged with indecent exposure at common law was entitled to a jury trial.

¶ 15 Common-law indecent exposure requires a "wil[l]ful exposure of the person in a public place in the presence of others." *Yauch v. State*, 109 Ariz. 576, 577–78, 514 P.2d 709, 710–11 (1973) (*disapproved on other grounds by State v. Western*, 168 Ariz. 169, 173 n. 3, 812 P.2d 987, 991 n. 3 (1991)); *see Longbridge Inv. Co. v. Moore*, 23 Ariz. App. 353, 357, 533 P.2d 564, 568 (1975) (Common-law elements of indecent exposure are the "willful exposure of nudity in a public place in the presence of others."); *see also Derendal*, 209 Ariz. at 420 n. 4, ¶ 12, 104 P.3d at 151 n. 4 ("[C]ommon law offense of indecent exposure . . . was defined as '[t]he exhibition of one's private parts in a public

place.'" (second alteration in original) (quoting *Lee*, 16 Ariz.App. at 452, 494 P.2d at 57)).

¶ 16 Crowell contends that our supreme court's apparent approval of *Lee* in *Derendal* necessarily compels the conclusion that she is entitled to a jury trial on the "adult service" charges against her. But the ordinance at issue in *Lee* was significantly different than the ordinances Crowell is accused of violating. The ordinance in *Lee* flatly banned the practice of nude dancing. 16 Ariz.App. at 450, 494 P.2d at 55 ("Any person entertaining or performing any dance . . . in any public place, who appears . . . in such a manner that the lower part of his or her torso, consisting of the private parts . . . is not covered by a fully opaque material or is so thinly covered as to appear uncovered, is guilty of a misdemeanor."). Thus, that ordinance did indeed share the fundamental character of the historical crime of indecent exposure, the essence of which was a prohibition against exhibiting one's private parts in public. *Id.* at 452, 494 P.2d at 57.

¶ 17 By contrast, the Scottsdale ordinances at issue here do not ban nude performances; to the contrary, they expressly permit nude dancing, albeit with certain limited restrictions. Thus, the Scottsdale Code permits Crowell to do what the Tucson ordinance forbade—the Code expressly *allows* Crowell to dance in a public business establishment "without opaque non-flesh colored fabric fully covering the genitals, pubic hair, vulva, mons veneris, anus, cleft of the buttocks, the areola, and the part of the female breast directly below the areola." S.C.C. § 16–237 (defining "nude"). To continue the comparison, while the dancer in *Lee* was precluded from performing nude in any business establishment under any conditions, Crowell and others who work in "adult service businesses" in Scottsdale are expressly permitted to dance while nude, as long as they, for example, have a permit, stay at least three feet away from patrons and do not allow patrons to

---

4. The court noted that in *Lee*, the court of appeals also had determined that the ordinance "involved a crime of moral turpitude," but found "that portion of the analysis was unnecessary. Once a court determines that a common law antecedent for which a jury trial was granted prior to statehood exists for a criminal offense, the inquiry is concluded, and the matter must be tried to a jury." *Derendal*, 209 Ariz. at 420 n. 4, ¶ 12, 104 P.3d at 151 n. 4.

place money on their persons while they are "nude." S.C.C. § 16–247(a), (d) & (*l* ).[5]

¶ 18 Crowell argues that nudity, which was central to the common-law crime of indecent exposure, is the critical element of the Scottsdale ordinances she is charged with violating. *See Derendal,* 209 Ariz. at 419–20, ¶¶ 10–11, 104 P.3d at 150–51 (analyzing whether the charged offense contained "elements comparable" or "substantially similar" to the common-law offense). She contends that one cannot violate the Scottsdale ordinances without exposing herself or himself in a public place, thus committing the essential elements of the common-law crime of indecent exposure. *See Lee,* 16 Ariz.App. at 452, 494 P.2d at 57.

¶ 19 We disagree. Although the ordinances at issue here apply to persons who are nude in a public place, fundamentally the Scottsdale Code *permits* such conduct, rather than bans it. As the Scottsdale City Council noted in "findings" it enacted with the ordinance in 1993, "some activities" associated with sexually oriented businesses no longer may be banned because they "are protected as expression under the First Amendment to the United States Constitution." S.C.C. § 16–236. Thus, as the council acknowledged, the First Amendment limits the City's ability to impose restrictions such as those at issue in *Lee,* which prohibited all nude dancing in public places. *See State v. Western,* 168 Ariz. 169, 173–74, 812 P.2d 987, 991–92 (1991) (prior Scottsdale city ordinance banning certain striptease performances held void on First Amendment grounds); *cf. State v. Gates,* 118 Ariz. 357, 359, 576 P.2d 1357, 1359 (1978) (indecent exposure statute may not under the First Amendment be applied to theater and dance); *State v. Jones,*

177 Ariz. 94, 100, 865 P.2d 138, 144 (App. 1993) (invalidating Maricopa County zoning ordinance regulating "adult live entertainment establishments").

¶ 20 Accepting that the law no longer permitted it to ban such activity, the Scottsdale City Council chose to impose limited restrictions that it concluded were justified by the public interest in preventing undesirable "secondary effects" such as the promotion of prostitution, drug use and dealing, organized crime and the spread of disease.[6] *See Empress Adult Video & Bookstore v. City of Tucson,* 204 Ariz. 50, 60, 59 P.3d 814, 824 (App.2002) (rejecting attack under Arizona Constitution on time-place-and-manner, content-neutral restrictions on operation of adult businesses).

¶ 21 Scottsdale argues that the ordinances at issue are "regulatory" and asserts that for that reason alone, a defendant charged with violating them is not entitled to a jury trial. Without deciding whether regulatory laws generally may not be subject to jury trial, we agree that Scottsdale's "adult services" ordinances regulate the provision of such services, rather than prohibit those services in the same manner as the common-law ban on indecent exposure prohibited the public exposure of one's private parts.

¶ 22 We acknowledge that our analysis of whether the elements of a modern-day offense are "comparable" or "substantially similar" to a historical common-law offense may not always be guided by a bright-line rule. The parties here vigorously and at some length argue, for example, about whether each of the various elements of common-law indecent exposure is found in the Scottsdale ordinances. We do not accept Scottsdale's

---

**5.** The Code also prohibits patrons younger than 18 to be present in an adult service business, requires that adult service providers perform on a stage at least 18 inches above floor level, prohibits providers from performing "a specified sexual activity," and prohibits adult services from being provided "between the hours of 1:30 a.m. and 6:00 a.m. or between 1:30 a.m. and 10:00 a.m. on Sunday." S.C.C. § 16–247(c), (d), (e) & (f). These restrictions are not at issue in this appeal.

**6.** In enacting the ordinance, the council announced, "This article is not intended to interfere

with legitimate expression but to avoid and mitigate [those] secondary effects." S.C.C. § 16–236. While the issue presented here does not require us to use the city council's "findings" to interpret the ordinance at issue, *cf. Grand Canyon Trust v. Ariz. Corp. Comm'n,* 210 Ariz. 30, 40, ¶ 43, 107 P.3d 356, 366 (App.2005) (appropriate to interpret statute in light of enacted legislative purpose), the council's findings are helpful to our analysis of the fundamental character of the ordinance for purposes of the analysis that *Derendal* directs us to perform.

contention that the current offense must be identical, or nearly so, to the historical offense in order to be jury-eligible. Nowhere does *Derendal* instruct that the elements of the modern-day offense must be identical to a common-law antecedent. As the court explained in that case, our task is to determine whether the modern offense "is of the same character" as the common-law crime. *Derendal*, 209 Ariz. at 425, ¶ 39, 104 P.3d at 156. Indeed, the *Derendal* court relied in large part on *Bowden*, which rejected a dissenter's contention that the gambling ordinance at issue in that case was not subject to a jury trial because it was "not identical with the offense recognized by the common law." *Bowden*, 26 Ariz. at 492, 226 P. at 551 (Lyman, J., dissenting).[7]

¶ 23 In studying the character of the Scottsdale ordinances at issue in this case, we conclude that they fundamentally permit nude dancing, subject only to limited restrictions. The nature of the restrictions the Scottsdale City Council chose to impose on nude performers bears heavily in this analysis. Our conclusion is grounded in large part on the fact that the restrictions the City has imposed are reasonably tailored to permit nude dancing. At some point, were those restrictions to become more severe, the character of the ordinances might shift fundamentally from a set of rules that govern how nude performances may take place to a regulatory scheme that largely prohibits such performances. Such ordinances might be more likely to be "comparable" or "substantially similar" to the common-law crime of indecent exposure. Those hypothetical ordinances, however, are not at issue here.

## CONCLUSION

¶ 24 Having concluded that Crowell is not entitled to a jury trial on the offenses with which she is charged, we affirm the decision of the superior court remanding the matter to the city court for a bench trial.[8]

CONCURRING: PATRICIA A. OROZCO, Presiding Judge, and G. MURRAY SNOW, Judge.

**7.** *See* Frankfurter & Corcoran, *supra* note 3, at 981 (In deciding which offenses were serious enough to warrant a jury trial right at common law, "we need not be 'troubled by the question where to draw the line. That is the question in pretty much everything worth arguing in the law.'" (quoting *Irwin v. Gavit*, 268 U.S. 161, 168, 45 S.Ct. 475, 69 L.Ed. 897 (1925))).

**8.** Given the manner in which we have resolved this appeal, we decline to accept Scottsdale's invitation to hold that no defendant accused of violating a municipal ordinance is entitled to a jury trial.