IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

SHAWN P. MACK, *Petitioner/Appellant,*

*v.*

THE HONORABLE HERCULES DELLAS, Judge of the PHOENIX
MUNICIPAL COURT, *Respondent Judge/Appellee,*

PHOENIX CITY PROSECUTORS OFFICE, *Real Party in Interest/Appellee.*

No. 1 CA-CV 13-0492
FILED 05-22-2014

---

Appeal from the Superior Court in Maricopa County
No. LC2012-000325-001
The Honorable Daniel G. Martin, Judge

**JURISDICTION ACCEPTED; RELIEF DENIED**

---

COUNSEL

Laurie A. Herman, Scottsdale
*Counsel for Petitioner/Appellant*

Phoenix City Prosecutors Office, Phoenix
By Kent C. Kearney, Gary Verburg
*Counsel for Real Party in Interest/Appellee*

---

**OPINION**

Presiding Judge Lawrence F. Winthrop delivered the opinion of the Court,
in which Judge Maurice Portley and Judge Andrew W. Gould joined.

---

**W I N T H R O P,** Presiding Judge:

¶1 Shawn P. Mack ("Defendant") challenges the decision of the Maricopa County Superior Court denying him a jury trial for the charged misdemeanor offense of obstructing a highway or other public thoroughfare. For the following reasons, we accept jurisdiction and deny relief.

## FACTS AND PROCEDURAL HISTORY

¶2 In October 2011, during the "Occupy Phoenix" protests, Phoenix police allegedly observed Defendant standing in a crosswalk against the pedestrian traffic light. Defendant was arrested and charged with obstructing a highway or other public thoroughfare pursuant to Arizona Revised Statutes ("A.R.S.") section 13-2906(A) (West 2014).[1] Defendant requested a trial by jury, but the Phoenix Municipal Court denied his request.

¶3 Defendant petitioned the Maricopa County Superior Court for special action review. The superior court accepted jurisdiction and denied relief. Defendant filed a timely notice of appeal, which in the exercise of our discretion we treat as a petition for special action. *See, e.g.*, *State v. Bayardi*, 230 Ariz. 195, 197, ¶ 7, 281 P.3d 1063, 1065 (App. 2012) (exercising special action jurisdiction over appeal after finding appellate jurisdiction lacking). We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, A.R.S. § 12-120.21(4), and Arizona Rule of Procedure for Special Actions 8(a).

## ANALYSIS

¶4 Defendant argues the misdemeanor offense of obstructing a highway or other public thoroughfare pursuant to A.R.S. § 13-2906(A) is a crime for which a defendant has a constitutional right to a trial by jury. Whether a defendant is constitutionally entitled to a trial by jury is a question of law we review *de novo*. *Stoudamire v. Simon*, 213 Ariz. 296, 297, ¶ 3, 141 P.3d 776, 777 (App. 2006) (citation omitted).

¶5 Under the Arizona Constitution, Article 2, Section 23, "The right of trial by jury shall remain inviolate." A criminal defendant has a

---

[1] We cite the most recent version of the constitutional provisions, statutes, and rules, because no revisions relevant to this appeal have since occurred.

constitutional right to a trial by jury if "a statutory offense has a common law antecedent that guaranteed a right to trial by jury at the time of Arizona statehood." *Derendal v. Griffith*, 209 Ariz. 416, 425, ¶ 36, 104 P.3d 147, 156 (2005) (citing Ariz. Const. art. 2, § 23). To establish a common law antecedent, the common law offense and modern statutory offense must share "substantially similar elements." *Id.*[2] However, the elements need not be identical. *Crowell v. Jejna*, 215 Ariz. 534, 540, ¶ 22, 161 P.3d 577, 583 (App. 2007).

¶6          Defendant contends the common law public nuisance offense of highway obstruction shares substantially similar elements with A.R.S. § 13-2906(A) and, as a public nuisance, highway obstruction was an indictable offense at common law for which a defendant had a right to a trial by jury.[3] *See, e.g., R. v. Johnson*, (1860) 121 Eng. Rep. 230 (K.B.) 231; 2 El. & El. 613, 615 ("The case ["making obstructions in a public and common highway"] went to the jury upon the merits; and they, contrary to the opinion of the Lord Chief Justice, and contrary, perhaps, to the opinion which this Court would have entertained, found for the defendant."). As a result, Defendant argues the public nuisance offense of highway obstruction is the common law antecedent to A.R.S. § 13-2906(A).[4]

---

[2]     Defendant concedes the second, alternative prong of the *Derendal* test, focusing on the seriousness of the offense, is inapplicable to obstructing a highway or other public thoroughfare. *See Derendal*, 209 Ariz. at 425, ¶ 37, 104 P.3d at 156 (under the second prong "the court must analyze the seriousness of the offense under Article 2, Section 24.").

[3]     The terms "common nuisance" and "public nuisance" are used interchangeably in this opinion.

[4]     Defendant also relies on territorial statutes for the proposition that the charged offense has a common law antecedent. The State similarly argues there is no common law antecedent in this case because the State can trace the "lineage" of A.R.S. § 13-2906(A) to a 1974 Kentucky statute. These arguments are misplaced. "The only historical factor of current relevance is whether an analog to the offense existed at common law that afforded the defendant a right to trial." *Ottaway v. Smith*, 210 Ariz. 490, 494 n.6, ¶ 14, 113 P.3d 1247, 1251 n.6 (App. 2005); *cf. Abuhl v. Howell*, 212 Ariz. 513, 514, ¶ 11, 135 P.3d 68, 69 (App. 2006) ("There is a significant distinction between a common law offense and a statutory offense, both

¶7 As a threshold issue, the State argues a public nuisance cannot serve as the basis for comparison between common law and statutory offenses, because the common law definition of that term broadly encompassed many offenses that did not include highway obstruction. *See, e.g.*, 1 William Hawkins, A Treatise of the Pleas of the Crown 692 (1716) (John Curwood ed., Sweet et al. 8th ed. 1824) (defining "common nuisance" as "an offence against the public, either by doing a thing which tends to the annoyance of all the king's subjects, or by neglecting to do a thing which the common good requires."). We disagree because the cases cited by Defendant and other historical sources sufficiently establish highway obstruction as a particular form of public nuisance. *See also* J.R. Spencer, *Public Nuisance–A Critical Examination*, 48 C.L.J. 55, 65 (1989) (tracing the confusion surrounding the definition of "common nuisance" to Hawkins' description, and explaining that description as "a residual category" containing "all the things that [Hawkins] could fit in nowhere else," rather than a definitive statement of the elements of "public nuisance.").

¶8 Under A.R.S. § 13-2906(A), "A person commits obstructing a highway or other public thoroughfare if, having no legal privilege to do so, such person, alone or with other persons, recklessly interferes with the passage of any highway or public thoroughfare by creating an unreasonable inconvenience or hazard." At common law, the common nuisance of highway obstruction involved interfering with the public's right to passage by "rendering the [highway] inconvenient or dangerous to pass: either positively, by actual obstructions; or negatively, by want of reparations." 4 William Blackstone, Commentaries *167. By the nineteenth century, "any use of the street that was both unreasonable and obstructive constituted illegitimate passage and infringed the public right." Rachel Vorspan, *Freedom of Assembly and the Right to Passage in Modern English Legal History*, 34 San Diego L. Rev. 921, 930-32 (1997) (analyzing common law highway obstruction cases).

¶9 Although the two offenses are superficially similar, we conclude the common law offense and modern statutory offense do not share substantially similar elements. First, the two offenses do not share a common *mens rea* requirement. The statutory offense prohibits "*recklessly*

existing at the time of statehood. Statutory rights under the territorial penal code do not qualify as common law antecedents that would require a jury trial under *Derendal*.").

interfere[ing] with the passage of any highway."   A.R.S. § 13-2906(A) (emphasis added); *see also* A.R.S. § 13-105(10)(c) (defining "[r]ecklessly"). By contrast, common law public nuisance, including highway obstruction, lacked a *mens rea* requirement prior to Arizona statehood.  *See R. v. Rimmington*, [2005] UKHL 63, [2006] 1 A.C. 459 (H.L.) [8-17] (Lord Bingham of Cornhill) (appeal taken from Eng.) (describing the development of a *mens rea* requirement in common law public nuisance offenses from the strict liability scheme recognized in the nineteenth century to the "knowingly" requirement in modern common law after twentieth century codification efforts).

¶10      Second, under A.R.S. § 13-2906(A), a defendant may claim a "legal privilege" to obstruct the highway in addition to arguing that his actions were reasonable.  Although the statute does not define "legal privilege," the term presumably includes the modern practice of state or local authorities issuing permits to obstruct the highway and interfere with the public right to passage.  *See, e.g.*, Ariz. Dep't Trans., ADM 10-1 Special Event Policy (2010) (permit available to encroach on state highway right-of-way for marathon), *available at* http://www.azdot.gov/docs/business/special-event-policy.pdf; City of Prescott, Right of Way Permits, http://www.cityofprescott.net/services/building/row.php (permit available to perform construction in public right-of-way) (last visited May 6, 2014).

¶11      By contrast, at common law the crown could not grant dispensation or license to obstruct the highway.  *See* F.W. Maitland, The Constitutional History of England 302-04 (1908) (Lawbook Exchange 2008) (discussing the limits on the king's dispensing power for *malum in se*); J.R. Spencer, *Public Nuisance−A Critical Examination*, 48 C.L.J. 55, 63-64 (1989) (discussing the efforts of English Parliament to limit the king's dispensing power by declaring statutory crimes *malum in se* as common nuisances). Nor could local councils on their own authority legally grant permission to private citizens to obstruct the highway.  Reginald Ryves, The King's Highway 20-21 (1908).  However, a defendant charged with the public nuisance of highway obstruction at common law could argue the reasonableness or necessity of the obstruction.  *See e.g., R. v. Cross*, (1812) 170 Eng. Rep. 1362 (N.P.) 1363; 3 Camp. 224, 227 ("A stage-coach may set down or take up passengers in the street, this being necessary for public convenience:  but it must be done in a reasonable time . . . ."); *R. v. Russell*, (1805) 102 Eng. Rep. 1350 (K.B.) 1352; 6 East 427, 430 ("[T]he primary object of the street was for the free passage of the public, and anything which impeded that free passage, without necessity, was a nusance.").

¶12     Therefore, although the offenses share a "reasonableness" element, the addition of a "legal privilege" in the statutory offense demonstrates a regulatory aspect of the offense not present in common law public nuisance. *Cf. Crowell*, 215 Ariz. at 538, ¶¶ 15-17, 161 P.3d at 581 (distinguishing city ordinance that regulated nude dancing from common law offense that flatly prohibited "exhibiting one's private parts in public"). As a result of the differences between these offenses, we conclude the public nuisance offense of highway obstruction is not a common law antecedent of Arizona's statute prohibiting obstructing a highway or other public thoroughfare.

**CONCLUSION**

¶13     We accept jurisdiction but deny relief, affirming the decision of the superior court. The common law public nuisance offense of highway obstruction is not a common law antecedent of A.R.S. § 13-2906(A) because the two offenses do not share substantially similar elements. Thus, a defendant charged under A.R.S. § 13-2906(A) is not constitutionally entitled to a trial by jury.



Ruth A. Willingham · Clerk of the Court
FILED: gsh