IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Petitioner/Appellant*,

*v.*

HON. MITCHELL KALAULI, *Respondent Judge/Appellee*,

DELIANA MILDRED KROLL, *Real Party in Interest/Appellee*.

No. 1 CA-CV 16-0013
FILED 3-20-2018

Appeal from the Superior Court in Mohave County
No. L8015CV201507173
The Honorable Lee F. Jantzen, Judge

**JURISDICTION ACCEPTED; RELIEF DENIED**

COUNSEL

Lake Havasu City Attorney's Office, Lake Havasu City
By Charles F. Yager
*Counsel for Petitioner/Appellant*

Whitney & Whitney PLLC, Kingman
By Jacob W. Baldridge
*Counsel for Real Party in Interest/Appellee*

Peoria City Attorney's Office, Peoria
By Michael L. Dynes
*Counsel for Amicus Curiae City of Peoria*

-----

## OPINION

Judge Michael J. Brown delivered the opinion of the Court, in which Presiding Judge Diane M. Johnsen and Judge Jon W. Thompson joined.

-----

**B R O W N**, Judge:

¶1            We address here whether a defendant charged with misdemeanor theft of services is entitled to a jury trial under the Arizona Constitution.   Under our criminal code, theft is a unified offense and a defendant's eligibility for a jury trial must therefore be analyzed within that context.   Because at least one of the varieties of theft has a common-law antecedent, we hold that a defendant charged with misdemeanor theft has the right to have his or her guilt determined by a jury.

## BACKGROUND

¶2            The State charged Deliana Kroll with theft, a class one misdemeanor, alleging she failed to pay the fare for a shuttle ride she took in Lake Havasu City.   She was also charged with disorderly conduct for cursing and other offensive conduct directed toward the driver.   The State filed a motion requesting a bench trial, asserting in part that Arizona's "misdemeanor theft statute has never had a common law antecedent and shares no substantially similar elements to common law larceny."   Kroll disagreed, pointing to case law recognizing larceny as the antecedent of shoplifting, and suggesting the jury eligibility question must be determined by recognizing theft as a single offense that may be committed in a number of ways.   The Lake Havasu City Municipal Court denied the State's motion, concluding that "[h]istorically[,] theft charges have been [j]ury [t]rial eligible."

¶3            The State filed a petition for special action in superior court challenging the municipal court's ruling.   The superior court accepted jurisdiction but denied relief, reasoning in part that although the State had raised "credible arguments regarding why the specific theft in this case does not fit the common law definition of larceny . . . the bottom line . . . is that the State of Arizona has always allowed for jury trials for theft . . . . Misdemeanor theft requires a jury trial."   The State then filed a notice of appeal.

## JURISDICTION

**¶4**        Although neither party questions this court's jurisdiction relating to the State's challenge of the superior court's ruling, we have an independent duty to determine our jurisdiction to consider an appeal. *Sorensen v. Farmers Ins. Co. of Ariz.*, 191 Ariz. 464, 465 (App. 1997). The State asserts that appellate jurisdiction exists pursuant to Arizona Rule of Procedure for Special Actions 8(a). This procedural rule alone, however, does not provide a statutory basis for jurisdiction, and it is unclear whether we have appellate jurisdiction over a superior court order denying special action relief. *See State v. Bayardi*, 230 Ariz. 195, 197 n.4, ¶ 7 (App. 2012).

**¶5**        Without deciding whether we have appellate jurisdiction, we may nonetheless consider the State's challenge if we elect to exercise special action jurisdiction. *See* Ariz. R.P. Spec. Act. 8(a). The State appears to have no "equally plain, speedy, or adequate remedy by appeal," and the issue raised is one of first impression with statewide importance. *See Sanchez v. Gama*, 233 Ariz. 125, 127, ¶ 4 (App. 2013) (citations omitted). Thus, we exercise our discretion to accept special action jurisdiction over this matter.

## DISCUSSION

**¶6**        Article 2, Section 23, of the Arizona Constitution provides that "[t]he right of trial by jury shall remain inviolate."[1] In *Derendal v. Griffith*, 209 Ariz. 416, 419, ¶ 9 (2005), our supreme court explained that this provision preserves the right to jury trial as it existed at the time Arizona adopted its constitution. The court concluded that the right to a jury trial is guaranteed "for any defendant charged with an offense for which a jury trial was granted prior to statehood." *Id.* The court also noted the longstanding principle that "when the right to jury trial for an offense existed prior to statehood, it cannot be denied for modern statutory offenses of the same 'character or grade.'" *Id.* at ¶ 10 (quoting *Bowden v. Nugent*, 26 Ariz. 485, 488 (1924)). Thus, to determine whether Section 23 assures a right to a jury trial for a particular offense, we consider first whether the modern crime has a common-law antecedent for which a defendant was afforded a jury trial. *Id.* "To reach this determination, we evaluate whether the charged offense contains elements 'comparable' or 'substantially similar' to those found in a jury-eligible common law offense." *Sulavka v. State*, 223

---

[1]        Section 24 further provides that "[i]n criminal prosecutions, the accused shall have the right to . . . have a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed." Ariz. Const. art. 2, § 24.

Ariz. 208, 210, ¶ 9 (App. 2009) (quoting *Derendal*, 209 Ariz. at 419, 425, ¶¶ 10, 39, and citing *Crowell v. Jejna*, 215 Ariz. 534, 536-37, ¶ 7 (App. 2007)). Whether Kroll is entitled to a jury trial is a question of law we review de novo. *Bosworth v. Anagnost*, 234 Ariz. 453, 454-55, ¶ 3 (App. 2014).

¶7        The roots of theft are larceny and its related offenses. Before statehood, larceny was defined under Arizona's territorial statutes, in part, as "the felonious stealing, taking, carrying, leading, or driving away the personal property of another," Rev. Stat. Ariz. Territory, Penal Code § 441 (1901), and the same definition was adopted in our first criminal code, Rev. Stat. Ariz., Penal Code § 481 (1913).[2] Our supreme court stated that the 1913 statutory language was consistent with the common law, describing the essential components of larceny as "the taking of the thing which is the subject of the crime from the possession of the owner into the possession of the thief; and . . . an asportation thereof." *Pass v. State*, 34 Ariz. 9, 10 (1928).

¶8        Following California's lead, in 1939 our legislature substituted theft for larceny, such that theft was now defined in five sub-parts, including (1) the felonious taking of property, (2) fraudulently appropriating entrusted property, and (3) defrauding a person of money, labor, or property by fraudulent representation. *See* Ariz. Code § 43-5501(1)-(5) (1939) ("Any law which refers to or mentions larceny, embezzlement, or stealing, shall be interpreted as if the word 'theft' was substituted therefor."). Arizona's current theft statute, titled "Theft; classification; definitions," provides as follows:

> A. A person commits theft if, without lawful authority, the person knowingly:
>
> 1. Controls property of another with the intent to deprive the other person of such property; or
>
> 2. Converts for an unauthorized term or use services or property of another entrusted to the defendant or placed in

---

[2]        Similar to territorial statutes, the 1913 code criminalized other acts as larceny, including (1) appropriating lost property to one's own use without making reasonable efforts to restore the property to its owner, (2) buying or receiving stolen property, (3) stealing or embezzling property in another state or country and bringing it to this state, and (4) connecting to service lines or pipes conveying gas, electricity, or water without payment. Rev. Stat. Ariz., Penal Code §§ 482, 493-497 (1913).

the defendant's possession for a limited, authorized term or
use; or

3. Obtains services or property of another by means of any
material misrepresentation with intent to deprive the other
person of such property or services; or

4. Comes into control of lost, mislaid or misdelivered
property of another under circumstances providing means of
inquiry as to the true owner and appropriates such property
to the person's own or another's use without reasonable
efforts to notify the true owner; or

5. Controls property of another knowing or having reason to
know that the property was stolen; or

6. Obtains services known to the defendant to be available
only for compensation without paying or an agreement to pay
the compensation or diverts another's services to the person's
own or another's benefit without authority to do so . . . .

Ariz. Rev. Stat. ("A.R.S.") § 13-1802(A)(1)-(6).[3]

**¶9**      The State does not dispute larceny was jury-eligible under the
common law. Instead, the State argues common-law larceny is not an
antecedent to theft *of services* because the two offenses lack substantially
similar elements. Specifically, it contends services cannot be taken and
carried away, and "asportation" is a necessary element of larceny. Kroll
counters that because theft is a unified offense, she has the right to a jury
trial because larceny and theft are "of the same character."

**¶10**      Arizona law is well established that "theft as defined in A.R.S.
§ 13-1802 is a single unified offense," *State v. Cotten*, 228 Ariz. 105, 107, ¶ 5
(App. 2011), which means that the statute identifies a "single crime and
provide[s] more than one means of committing the crime," *State v. West*, 238
Ariz. 482, 489, ¶ 19 (App. 2015) (quoting *In re Det. of Halgren*, 132 P.3d 714,
720 (Wash. 2006)). As recognized by our supreme court, "in adopting
A.R.S. § 13-1802, the legislature has created a single crime of 'theft,'
combining or merging the common law crimes of larceny, fraud,
embezzlement, obtaining money by false pretenses, and other similar

---

[3]      Section 13-1802(A) includes three additional subsections addressing
theft of ferrous and nonferrous metals. A.R.S. § 13-1802(A)(7)-(9).

offenses." *State v. Tramble*, 144 Ariz. 48, 52 (1985).[4] The court explained that "[t]he obvious purpose in enacting this 'omnibus' theft statute was to eliminate technical distinctions between various types of stealing and to deal with all forms in a single statute, thus simplifying prosecution for the unlawful 'acquisition' of property belonging to others." *Id.* (citing *State v. Jones*, 499 S.W.2d 236, 240 (Mo. Ct. App. 1973)).[5]

¶11 Among the implications of theft being a unitary crime, at least two are significant here. First, when charging a defendant with theft, the State is not required to specify a subsection of A.R.S. § 13-1802 within the charging document. *See State v. Winter*, 146 Ariz. 461, 464-65 (App. 1985) ("[A] general citation to the theft statute in the indictment suffices to charge a violation of its subparts" because of the unitary nature of the crime of theft). Second, the jury need not unanimously agree on the manner in which the defendant committed the offense. *See Cotten*, 228 Ariz. at 107-08, ¶¶ 4, 6 (rejecting defendant's argument that the trial court erred in failing to submit special verdict forms to distinguish between two subsections of theft); *State v. Dixon*, 127 Ariz. 554, 561 (App. 1980) (concluding that jury unanimity is not required for theft cases "as to the means by which the

---

[4] To clarify, embezzlement and false pretenses were not common-law crimes under English law. Instead, Parliament created the two crimes "to fill gaps in the law of larceny." 3 Wayne R. LaFave, *Substantive Criminal Law* § 19.1 (3d ed. 2017). However, other offenses relevant here, such as larceny by trick, appear to have been crimes under the common law. *See, e.g., State v. Medina*, 355 P.3d 108, 116 n.9 (Or. 2015) ("Unlike larceny by trick, embezzlement is not a common-law crime."); *Commonwealth v. Gold*, 186 A. 208, 210 (Pa. Super. Ct. 1936) (noting that "larceny by trick is a common–law offense"). Regardless, this does not affect our analysis. Given the unitary nature of our theft statute, we decline to analyze jury eligibility based on the "thin and technical" dividing lines between larceny and related crimes. *See Substantive Criminal Law*, § 19.1(b); *see also Sulavka*, 223 Ariz. at 209, ¶ 5 (noting that "jury eligibility under the Arizona Constitution turns on whether a statutory offense is sufficiently linked to a common law offense for which a jury trial was granted prior to statehood").

[5] The Arizona Criminal Code Commission noted "[t]he essence of theft . . . is the obtaining of unlawful control over property of another . . . . For all practical purposes, the verbal distinctions among embezzlement, receiving stolen property, finding and keeping lost property, defrauding an innkeeper and similar theft offenses are abolished and replaced by a singular concept of *depriving another of his or her property or services*." *State v. Winter*, 146 Ariz. 461, 464 (App. 1985) (emphasis added).

crime is committed provided there is substantial evidence to support each of the means charged").

¶12            Kroll's charging document is not in the record before us, but it makes no difference whether she was accused of committing theft by violating A.R.S. § 13-1802(A)(6) (theft of services) or by violating another subsection of the statute. The essence of the charge is that she allegedly obtained transportation services without paying for them. Regardless of the actual theory the State decides to pursue at trial, if she is found guilty, the conviction will be for committing the unified crime of theft in violation of A.R.S. § 13-1802, or "stealing," *see Tramble*, 144 Ariz. at 52, not theft of services. Whether a person unlawfully acquires tangible property, such as a bicycle, or intangible property, such as a shuttle ride, the character of the crime is the same—stealing property (tangible or intangible) that the person does not have a right to acquire, control, or convert. *See* A.R.S. § 13-1801(A)(12), (14) (defining "property" as "any thing of value, *tangible or intangible*, including trade secrets," and "services" including "labor, professional services, transportation, cable television, computer or communication services, gas or electricity services, accommodation in hotels, restaurants or leased premises or elsewhere, admission to exhibitions and use of vehicles or other movable property") (emphasis added). Stated differently, it does not matter how the State intends to prove the unlawful acquisition of property at trial because each of the nine subsections defines a different way to commit one crime—theft.

¶13            The State acknowledges that theft is a unitary offense but contends the legislature's decision to combine the subsections of theft under one statute does not mean that just because some subsections of the statute are jury-eligible, all of them are. In support, the State directs us to this court's decisions in *Bosworth* and *Sulavka*, asserting that because we addressed individual subsections of the shoplifting statutes in those cases to determine jury trial eligibility, we should do the same here with the theft statute. *See Bosworth*, 234 Ariz. at 457, ¶ 11; *Sulavka*, 223 Ariz. at 211, ¶ 13. But the State does not cite, nor has our research revealed, any authority suggesting the legislature combined common-law offenses into a single crime when it adopted the shoplifting statute, A.R.S. § 13-1805. As such, we are not persuaded by the State's assertion that we must ignore the theft statute's unitary nature when determining jury trial eligibility.

¶14            Without question, not every element of the nine subsections, including theft of services under A.R.S. § 13-1802(A)(6), has a corresponding element in common-law larceny. Jury trial eligibility in this instance, however, does not turn on such a technical analysis. *See Buccellato*

*v. Morgan*, 220 Ariz. 120, 123, ¶ 7 (App. 2008) (noting that the elements of the two offenses need not be identical as long as they are "of the same character"); *Crowell*, 215 Ariz. at 539, ¶ 22 ("We acknowledge that our analysis of whether the elements of a modern-day offense are 'comparable' or 'substantially similar' to a historical common-law offense may not always be guided by a bright-line rule."). Utilizing a strict element-by-element analysis of each of the subsections of theft to determine jury trial eligibility would run counter to the legislature's purpose—to eliminate technical distinctions and to simplify prosecution—when it joined other states by combining various forms of stealing into a unified offense called theft. *See Tramble*, 144 Ariz. at 52. Because the legislature has determined the different subsections of theft have such commonality to be properly unified, the statute's unitary nature calls for a unitary jury-eligibility determination.

¶15        The unified nature of the theft statute makes prosecution easier because the State can file charges and proceed to trial on any theory supported by the evidence, without regard to technical distinctions that previously existed between offenses like larceny, embezzlement, and false pretenses. *Supra* ¶ 11; *People v. Myers*, 275 P. 219, 221 (Cal. 1929) (recognizing that California's consolidated theft statute was designed to simplify procedure and relieve the courts from difficult questions that permit defendants to "escape just conviction solely because of the border line distinction existing between these various crimes"). Our holding is a corollary to that principle—avoiding a situation wherein a defendant charged with theft would be eligible for a jury trial on some evidentiary theories but not others.[6]

¶16        Finally, as the superior court noted, Arizona has "always" allowed jury trials for misdemeanor theft, and the State has not challenged that assertion. *See Derendal*, 209 Ariz. at 419, ¶ 9 ("[O]ur constitution requires that the state guarantee a right to jury trial for any defendant charged with an offense for which a jury trial was granted prior to statehood."). Nor does the State argue that theft, as a single crime, cannot be jury-eligible. At oral argument in the superior court, the State acknowledged that "some" of the subsections of A.R.S. § 13-1802 could

---

[6]        For example, accepting the State's view that theft of property and theft of services must be analyzed separately would mean a person who rides a bus without paying a fare or sneaks into a concert without a ticket would not be entitled to a jury trial because no tangible property is involved, but a person who steals a bus pass or concert ticket would be entitled to a jury trial. Such a distinction has no logic.

have substantially similar elements to a common-law crime. Likewise, amicus City of Peoria argues that theft of any *service* is not jury-eligible but acknowledges that theft of *property* such as water or electricity would be jury-eligible under A.R.S. § 13-1802(A)(2). Notwithstanding the positions urged by the State and the amicus that theft of services has no common-law antecedent, over more than a century, no Arizona appellate court has held that a person charged with any variety of larceny or theft, in all degrees, is ineligible for a jury trial. And the only authority we have found indicates to the contrary. *See State v. Paramo*, 92 Ariz. 290, 293-94 (1962) (affirming conviction for petty theft after trial to a jury).

¶17　　We therefore hold that the unified statutory scheme of theft adopted by our legislature is a comparable and substantially similar crime to common-law larceny in that the foundation of both crimes is the unlawful deprivation of property. For that reason, one charged with violating the unified crime of theft is entitled to a jury trial, regardless of the degree of the offense or the nature of the property alleged to have been taken.

## CONCLUSION

¶18　　We accept jurisdiction, but deny relief. We therefore affirm the orders of the municipal court and superior court confirming Kroll's right to a jury trial for theft.

