221 P.3d 1022

Lisa M. SULAVKA, Plaintiff/Appellee,

v.

STATE of Arizona, Defendant/Appellant.

No. 1 CA–CV 08–0267.

Court of Appeals of Arizona,
Division 1, Department C.

Dec. 8, 2009.

Robinson & Associates By Robert G. Robinson, Glendale, Attorneys for Plaintiff/Appellee.

Stephen M. Kemp, Peoria City Attorney By Shawna L. Brumbaugh, Assistant City Prosecutor, Peoria, Attorneys for Defendant/Appellant.

## OPINION

BROWN, Judge.

¶ 1 In this appeal, we consider whether Lisa M. Sulavka, charged with shoplifting by

concealment, has the right to a jury trial under the Arizona Constitution. For the following reasons, we hold she does have that right and therefore we affirm the order of the superior court.

## BACKGROUND

¶ 2 The State filed a complaint in the Peoria Municipal Court charging Sulavka with shoplifting by concealment, in violation of Arizona Revised Statutes ("A.R.S.") section 13–1805(A)(5) (2001). In her motion to set, Sulavka asked for a jury trial. The municipal court denied her request, reasoning in part that shoplifting, "with its multiple classifications and particularized definitions (e.g. display for sale, establishment), is not a modern-day analog of common law larceny."

¶ 3 Sulavka filed a special action petition in the superior court, which accepted jurisdiction and found that the municipal court abused its discretion in denying Sulavka's request for a jury trial. The superior court noted that "[w]hile the issue is interesting, and subject to debate, [it] lacks the authority to hold that prior appellate case law on the issue is wrong," referring to a prior decision of this court which held that the charge of shoplifting justifies the right to trial by jury. *See State v. Superior Court ("Espinosa")*, 121 Ariz. 174, 176, 589 P.2d 48, 50 (App.1978). The superior court ordered the municipal court to grant Sulavka a jury trial "unless or until the Court of Appeals reconsiders its prior holding." The State then filed a timely notice of appeal and we have jurisdiction pursuant to Arizona Rule of Procedure for Special Actions 8(a).

## DISCUSSION

¶ 4 The State argues that the superior court abused its discretion and erred as a matter of law in reversing the decision of the municipal court. Because eligibility for a jury trial is a question of law, we independently determine the merits of Sulavka's special action complaint. *Ottaway v. Smith*, 210 Ariz. 490, 492, ¶ 5, 113 P.3d 1247, 1249 (App. 2005).

¶ 5 The Sixth Amendment to the United States Constitution and Article 2, Sections 23 and 24 of the Arizona Constitution guarantee the right to a jury trial for the accused in a criminal prosecution. While the Sixth Amendment affords such a right to serious offenses, it does not extend to petty offenses. *Duncan v. Louisiana*, 391 U.S. 145, 159, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). In contrast, Section 23 of the Arizona Constitution provides that "[t]he right of trial by jury shall remain inviolate." Ariz. Const. art. 2, § 23. Both Sections 23 and 24 preserved, but did not create, the right to a jury trial as it existed under common law prior to statehood. *Derendal v. Griffith*, 209 Ariz. 416, 419, ¶ 8, 104 P.3d 147, 150 (2005) (citing *Bowden v. Nugent*, 26 Ariz. 485, 487–88, 226 P. 549, 550 (1924)). Because the United States Constitution does not contain language similar to Section 23, our constitution potentially affords a broader right to a jury trial than mandated under federal law. *See id.* at 419–20, ¶¶ 9–12, 104 P.3d at 150–51. Thus, jury eligibility under the Arizona Constitution turns on whether a statutory offense is sufficiently linked to a common law offense for which a jury trial was granted prior to statehood. *Id.* at ¶ 9.

¶ 6 In 1966, the Arizona Supreme Court adopted a test for deciding whether an offense is jury-eligible under the Federal or Arizona Constitution. *Rothweiler v. Superior Court*, 100 Ariz. 37, 410 P.2d 479 (1966), *overruled in part by Derendal*, 209 Ariz. 416, 104 P.3d 147 (eliminating the "moral quality" prong of the *Rothweiler* test). The court defined three factors as relevant to that inquiry: (1) the relationship of the charged offense to common law crimes tried by a jury; (2) the severity of the possible penalty; and (3) the moral quality of the offense. *Id.* at 42, 410 P.2d at 483. Over time, Arizona courts viewed each prong of the *Rothweiler* test as providing an independent basis for the right to a jury trial. *See, e.g., State v. Harrison*, 164 Ariz. 316, 317, 792 P.2d 779, 780 (App.1990).

¶ 7 In 1989, the United States Supreme Court re-visited the right to a jury trial under the Sixth Amendment. *Blanton v. City of N. Las Vegas*, 489 U.S. 538, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989). The Court abandoned earlier decisions focusing on the

nature of an offense and whether it was triable by jury at common law in favor of a more objective standard. *Id.* at 541, 109 S.Ct. 1289. The Court held that an offense with a maximum sentence of less than six months is presumptively a petty offense and therefore the constitutional right to a jury trial does not attach. *Id.* at 543, 109 S.Ct. 1289.

¶ 8 On several occasions our supreme court declined to re-examine the *Rothweiler* test, reasoning that Arizona affords its citizens greater access to jury trials than required under the United States Constitution. *See, e.g., Benitez v. Dunevant*, 198 Ariz. 90, 94, ¶ 10, 7 P.3d 99, 103 (2000); *see also State ex rel. McDougall v. Strohson*, 190 Ariz. 120, 126–27, 945 P.2d 1251, 1257–58 (1997). But in 2005, the court directly addressed *Blanton's* implications on the test for jury eligibility in Arizona. *Derendal*, 209 Ariz. at 419, ¶ 6, 104 P.3d at 150.

¶ 9 In *Derendal*, our supreme court determined that Article 2, Section 23 mandates retention of the first prong of the *Rothweiler* test—the relationship of the offense to common law crimes. *Id.* at ¶ 9. Recognizing that the phrase "shall remain inviolate," preserves the right to jury trial as it existed at the time Arizona adopted its constitution, the court concluded that the right to a jury trial is guaranteed "for any defendant charged with an offense for which a jury trial was granted prior to statehood." *Id.* The court further recognized that "when the right to jury trial for an offense existed prior to statehood, it cannot be denied for modern statutory offenses of the same 'character or grade.'" *Id.* at ¶ 10. Thus, to determine whether Section 23 assures a right to a jury trial, we consider whether a modern crime has a common law antecedent. *Id.* To reach this determination, we evaluate whether the charged offense contains elements "comparable" or "substantially similar" to those found in a jury-eligible common law offense. *Id.* at 419, 425, ¶¶ 10, 39, 104 P.3d at 150, 156; *Crowell v. Jejna*, 215 Ariz.

534, 536–37, ¶ 7, 161 P.3d 577, 579–80 (App. 2007).

¶ 10 If a modern statutory offense does not have a common law antecedent, then the right to a jury trial depends on whether the offense falls under the guarantee set forth in Article 2, Section 24 of the Arizona Constitution, which provided the basis for the second prong of the *Rothweiler* test. Because this provision is identical to the Sixth Amendment, Arizona courts have construed it in a similar manner to the United States Constitution. *Fushek v. State*, 218 Ariz. 285, 288, ¶ 8, 183 P.3d 536, 539 (2008). Thus, the court in *Derendal* adopted *Blanton's* bright-line rule to distinguish between serious and petty crimes, finding that if our legislature defines an offense as a misdemeanor punishable by no more than a six-month prison sentence, it is presumptively a petty offense. 209 Ariz. at 422, ¶ 21, 104 P.3d at 153. The court provided specific criteria for deciding if an offense is serious despite having only a relatively short sentence. *Id.* at 422–23, ¶¶ 21–26, 104 P.3d at 153–54 (requiring penalty to arise directly from statutory law, with severe consequences that apply uniformly to defendants convicted of the offense). As such, the court adopted only a modified version of the *Blanton* test.[1]

¶ 11 Unlike the first two prongs of the *Rothweiler* test, our supreme court found the third prong, the moral quality of an offense, to be without "constitutional pedigree." *Id.* at 423, ¶ 27, 104 P.3d at 154. Finding that this inquiry became increasingly subjective and ambiguous, yielding "inexplicable results," the court expressly disavowed it. *Id.* at 424, ¶ 32, 104 P.3d at 155. In doing so, the court noted that its decision to overrule *Rothweiler* on the third prong did not offend principles of *stare decisis* nor would it severely curtail the right to a jury trial in Arizona. *Id.* at ¶ 33. Rejecting the defense argument that overruling the "moral quality" prong would severely curtail the right to a jury trial, the court concluded that its decision would have "little effect upon the num-

---

1. The *Derendal* test for jury eligibility for a misdemeanor is thus two-fold: (1) whether the offense has an antecedent tried by jury at common law; and if not, (2) whether the offense has direct consequences that render punishment severe even if the maximum possible prison sentence is six months or less. 209 Ariz. at 424, ¶¶ 9–32, 104 P.3d at 155.

ber of offenses for which our constitution mandates a jury trial." *Id.* at ¶ 35. The court recognized that during the almost forty years since *Rothweiler,* the court of appeals had labeled misdemeanor offenses as crimes of moral turpitude only four times. *Id.* And, in two of those cases, the court of appeals also "found the offense to have a common law antecedent requiring a jury trial." In one of the two cases, *Espinosa,* this court applied the *Rothweiler* test and held that the defendant, charged with misdemeanor shoplifting, was entitled to have his case considered by a jury under our constitution. *Espinosa,* 121 Ariz. at 176, 589 P.2d at 50. We reached this result based on the severe maximum penalty, the moral turpitude of the offense, and the close relationship of shoplifting to common law larceny. *Id.*

¶ 12 Here, the State contends that *Espinosa* is no longer good law, having been implicitly overruled by *Derendal* because *Espinosa* was decided using the *Rothweiler* test. Admittedly, the decision in *Espinosa* is devoid of comparative analysis addressing the elements of shoplifting and larceny and its precedential value is weak. Nonetheless, the court in *Espinosa* did conclude that shoplifting "bears a close relationship" to the crime of larceny. *Espinosa,* 121 Ariz. at 176, 589 P.2d at 50. And in *Derendal,* after referencing *Espinosa* as an example of a jury trial right based on a common law antecedent, our supreme court repeated its expectation that while its decision was intended to reduce uncertainty as to which offenses merit a trial by jury, the decision "[would] have little effect upon the number of offenses for which our constitution mandates a jury trial." 209 Ariz. at 425, ¶ 35, 104 P.3d at 155. Based on the supreme court's citation to *Espinosa,* considered along with our state's constitu-tional provision requiring that the right to a jury trial "shall remain inviolate," we do not view *Derendal* as implicitly overruling the holding of *Espinosa.*

¶ 13 Furthermore, even if we accept the State's invitation to re-evaluate whether the crime of shoplifting remains jury-eligible after *Derendal,* we do not reach a result contrary to *Espinosa,* at least as it relates to shoplifting by concealment. Applying the first prong of the *Derendal* test, we find that the elements of larceny and shoplifting by concealment are sufficiently comparable.[2]

¶ 14 Arizona's shoplifting statute provides in relevant part: "A person commits shoplifting if, while in an establishment in which merchandise is displayed for sale, such person knowingly obtains such goods of another with the intent to deprive that person of such goods by ... [c]oncealment." A.R.S. § 13–1805(A)(5). Prior to statehood, larceny was defined under Arizona's territorial statutes as "[t]he felonious stealing, taking, carrying, leading, or driving away the personal property of another." Arizona Penal Code, Title XIII, § 441 (1901); Arizona Penal Code, Title XIV, § 481 (1913). In 1928, our supreme court found this language consistent with the common law and described the essentials of the crime of larceny as "*the taking of the thing which is the subject of the crime from the possession of the owner into the possession of the thief, and ... an asportation thereof.*" *Pass v. State,* 34 Ariz. 9, 10, 267 P. 206, 206 (1928) (emphasis added) ("This was the rule at common law, and is also the rule under all the statutes, except possibly that of Texas.").[3]

¶ 15 Contrary to the State's position, the test under the first step of *Derendal* is not whether elements are identical, or nearly

---

**2.** In its opening brief, the State does not argue, or even suggest, that larceny was not a jury-eligible common law offense in Arizona prior to statehood. *See Phoenix City Prosecutor's Office v. Klausner,* 211 Ariz. 177, 179–80, ¶ 9, 118 P.3d 1141, 1143–44 (App.2005) (citations omitted). We decline to address the State's contention, mentioned in passing for the first time in its reply brief, that because English Parliament passed a shoplifting statute in 1698, larceny is not a common law antecedent to shoplifting. *See State v. Guytan,* 192 Ariz. 514, 520, ¶ 15, 968 P.2d 587, 593 (App.1998) (refusing to consider arguments made for the first time in a reply brief). We also decline to consider the twenty-one page order attached to the State's reply brief, which was issued by the Peoria Municipal Court in an unrelated matter. *See* ARCAP 28(c) (improper to cite unpublished decisions as authority).

**3.** Based on this decision, we find it unnecessary to consider an alternative definition of larceny cited by the State.

so. *See Crowell,* 215 Ariz. at 540, ¶ 22, 161 P.3d at 582–83 ("Nowhere does *Derendal* instruct that the elements of the modern-day offense must be identical to a common-law antecedent."). The inquiry instead looks more generally to whether the modern statutory offense "is of the same character," "comparable," or "substantially similar" as the common law crime. *Id.* at 539–40, ¶ 22, 161 P.3d at 582–83. Thus, although the offense of shoplifting by concealment contains some variations from common law larceny, they are for this purpose, distinctions without legal significance.

¶ 16 For example, the State argues that larceny lacks the element of requiring a person to be in an establishment in which merchandise is displayed for sale. It is true that larceny does not have the same requirement as to the physical location of the stolen goods, but larceny does require the thing which is the subject of the crime to be in the possession of the owner. Merchandise that is displayed for sale is in the possession of the owner of the store, which means that larceny and shoplifting by concealment involve the comparable elements of unlawful taking of property that belongs to another person. *See Derendal,* 209 Ariz. at 419, ¶ 10, 104 P.3d at 150 (recognizing that "many newly minted statutory criminal offenses have no precise analog in the common law").

¶ 17 The State also points to the asportation requirement of larceny, contending that shoplifting only requires "concealment." Asportation is defined generally as "the act of carrying away or removing [property]." Black's Law Dictionary 122 (8th ed. 2004). An asportation occurs when a person exercises dominion and control over the property and "any carrying away movement, however slight, is sufficient." *Id.* (quoting 3 Charles E. Torcia, *Wharton's Criminal Law* § 357, at 412–13 (15th ed. 1995)). Also, "the slightest start of the carrying-away movement constitutes asportation." *Id.* (quoting Rollin M. Perkins & Ronal N. Boyce, *Criminal Law* 323 (3d ed. 1982)); *see also Davis v. State,* 41 Ariz. 12, 15–16, 15 P.2d 242, 243–44 (1932) (noting that asportation is tied to the "very first act of removal of the property"). Thus, the act of removing an item from the shelf

and concealing it in order to deprive the owner of the item constitutes asportation. Indeed, it is difficult to conceive of any situation in which a shoplifter could "conceal" merchandise on display without carrying it away or removing it from the display area. *See* Black's 306 (defining concealment as the "act of removing from sight or notice; hiding").

¶ 18 We therefore find that the common law crime of larceny is an antecedent of shoplifting by concealment, a conclusion which is consistent with other post-*Derendal* cases. *See State v. Willis,* 218 Ariz. 8, 11, ¶ 12, 178 P.3d 480, 483 (App.2008) (finding no right to jury trial because criminal trespass statute was much broader than similar common law offense and reflected a serious policy shift in state law); *State v. Le Noble,* 216 Ariz. 180, 183, ¶ 16, 164 P.3d 686, 689 (App. 2007) (finding that defendant was entitled to jury trial for misdemeanor charge of resisting arrest); *Crowell,* 215 Ariz. at 540, ¶ 24, 161 P.3d at 583 (finding no constitutional right to jury trial for violation of topless dancing regulations); *Klausner,* 211 Ariz. at 180, ¶ 10, 118 P.3d at 1144 (upholding denial of jury trial requests for misdemeanor assault; jury trial rights provided by the territorial penal code were not preserved by the Arizona Constitution); *Ottaway,* 210 Ariz. at 494, ¶ 16, 113 P.3d at 1251 (rejecting defendant's request for jury trial for interference with a judicial proceeding). In each of those cases, except *Le Noble,* the elements between the statutory offenses and the common law offenses were not comparable. Thus, our supreme court's prediction in *Derendal* that its decision would have little effect on the actual number of jury-eligible offenses, remains valid.

¶ 19 We therefore hold that larceny is a common law antecedent to shoplifting by concealment and that Article 2, Section 23 of the Arizona Constitution preserves the right to a jury trial for this specific offense. Because the first step of the *Derendal* test is satisfied, we need not address the second step.

## CONCLUSION

¶ 20 For the foregoing reasons, we affirm the superior court's finding that the munici-

pal court abused its discretion in denying Sulavka her right to a jury trial.

CONCURRING: PHILIP HALL, Presiding Judge, and MAURICE PORTLEY, Judge.