IN THE
# ARIZONA COURT OF APPEALS
## DIVISION TWO

———————————————

PETER J. KANIOWSKY,
*Plaintiff/Appellant,*

*v.*

THE PIMA COUNTY CONSOLIDATED JUSTICE COURT;
THE HON. MARIA L. FELIX, A JUDGE THEREOF;
AND THE PIMA COUNTY ATTORNEY'S OFFICE,
*Defendants/Appellees.*

No. 2 CA-CV 2015-0157
Filed March 21, 2016

———————————————

Appeal from the Superior Court in Pima County
No. C20151493
The Honorable Richard D. Nichols, Judge

**VACATED AND REMANDED**

———————————————

COUNSEL

Benavidez Law Group, P.C., Tucson
By Javier Alatorre
*Counsel for Plaintiff/Appellant*

Barbara LaWall, Pima County Attorney
By Jacob R. Lines, Tucson
*Counsel for Defendants/Appellees*

**OPINION**

Presiding Judge Howard authored the opinion of the Court, in which Judge Espinosa and Judge Staring concurred.

H O W A R D, Presiding Judge:

**¶1** Peter Kaniowsky appeals from the trial court's denial of relief in his special action challenging the Pima County Justice Court's denial of his request for a jury trial on five unlawful imprisonment charges. Kaniowsky argues he is entitled to a jury trial because unlawful imprisonment was a jury-eligible offense at common law. Because we agree with Kaniowsky, we vacate the court's order and remand for further proceedings.

**Factual and Procedural Background**

**¶2** The relevant facts are not in dispute. Kaniowsky was charged in justice court with five counts each of assault and unlawful imprisonment. He filed a motion requesting a jury trial for the false imprisonment counts,[1] which the court denied. He then filed a complaint for special action in superior court, arguing he was entitled to a jury trial because false imprisonment was a jury-eligible offense at common law. The superior court accepted jurisdiction but denied relief. It reasoned that *Amancio v. Foster*, 196 Ariz. 95, 98, 993 P.2d 1059, 1062 (App. 1999), which concluded that unlawful imprisonment was not a jury-eligible offense based on its seriousness, was controlling and thus Kaniowsky was not entitled to a jury trial. We have jurisdiction over Kaniowsky's appeal pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1). *See* Ariz. R. P. Spec. Actions 8(a).

---

[1]Our supreme court has found that misdemeanor assault is "the equivalent of a simple battery at common law, which was not a crime requiring a jury trial." *Bruce v. State*, 126 Ariz. 271, 273, 614 P.2d 813, 815 (1980). Kaniowsky has not attempted to challenge that conclusion.

**Applicability of *Amancio***

**¶3**        Kaniowsky argues that the superior court erred by relying on *Amancio* because it did not reach the question of whether unlawful imprisonment had a jury-eligible counterpart in common law.  When the superior court accepts jurisdiction of a special action, but denies relief, we review for an abuse of discretion.  *Merlina v. Jejna,* 208 Ariz. 1, ¶ 6, 90 P.3d 202, 204 (App. 2004).  Whether a defendant is entitled to a jury trial, however, is a question of law we review de novo.  *Urs v. Maricopa Cty. Attorney's Office,* 201 Ariz. 71, ¶ 2, 31 P.3d 845, 846 (App. 2001).  An error of law may constitute an abuse of discretion.  *State v. Wall,* 212 Ariz. 1, ¶ 12, 126 P.3d 148, 150 (2006).

**¶4**        At the time *Amancio* was decided, our supreme court had identified three factors as relevant to determining a defendant's right to a jury trial, any one which could independently give rise to jury eligibility.  *See Derendal v. Griffith*, 209 Ariz. 416, ¶ 5, 104 P.3d 147, 149 (2005) (overruling *Rothweiler v. Superior Court,* 100 Ariz. 37, 410 P.2d 479 (1966)).  The existence of a jury-eligible common law antecedent was one factor and the seriousness of the offense was another. *Id.*

**¶5**        The defendant in *Amancio* argued the seriousness of the offense entitled him to a jury trial and conceded that unlawful imprisonment did not have a jury-eligible common law antecedent. 196 Ariz. 95, ¶ 7, 993 P.2d at 1060.  The court, in its analysis, thus focused solely on the seriousness of the offense.  *Id.* ¶¶ 7-15.

**¶6**        The defendant's concession deprived the court of "the opportunity to address [the] argument that" unlawful imprisonment had a jury-eligible common law antecedent, thus waiving the issue for review.  *Harris v. Cochise Health Sys.*, 215 Ariz. 344, ¶ 18, 160 P.3d 223, 229 (App. 2007); *see also State v. Bolton,* 182 Ariz. 290, 298, 896 P.2d 830, 838 (1995) (insufficient argument on appeal waives claim).  That waiver meant the court was not "fully advised on the question." *Creach v. Angulo,* 186 Ariz. 548, 552, 925 P.2d 689, 693 (App. 1996).  Consequently, the court's statement that "there was . . . no entitlement to a jury trial under the common law," *Amancio*, 196 Ariz. 95, ¶ 16, 993 P.2d at 1062, was dictum, *Creach*, 186 Ariz. at 552,

925 P.2d at 693; *see also Town of Chino Valley v. City of Prescott*, 131 Ariz. 78, 81, 638 P.2d 1324, 1327 (1981) (court's statement on question not necessarily decided in case is dictum). And in any event, based on the following analysis, we conclude that any statement in *Amancio* indicating unlawful imprisonment does not have a common law antecedent is an incorrect statement of the law.

## False Imprisonment at Common Law

¶7        Kaniowsky argues that unlawful imprisonment pursuant to A.R.S. § 13-1303 is the modern day analog to the jury-eligible, common law offense of false imprisonment. Our supreme court has delineated a "two step process" to determine whether a defendant is guaranteed a right to a jury trial for a particular offense. *Derendal*, 209 Ariz. 416, ¶¶ 36-37, 104 P.3d at 156; *see also* Ariz. Const. art. 2, § 23; Ariz. Const. art. 2, § 24. Under the first step, a court must determine whether the offense "has a common law antecedent that guaranteed a right to trial by jury at the time of Arizona statehood." *Derendal*, 209 Ariz. 416, ¶ 36, 104 P.3d at 156; *see also* Ariz. Const. art. 2, § 23. If the charged offense has a common law antecedent for which a jury trial right existed, the inquiry ends and "the defendant's right to a trial by jury is established." *Derendal*, 209 Ariz. 416, ¶ 36, 104 P.3d at 156. If this first prong is not satisfied, the court, under the second prong, "must analyze the seriousness of the offense under Article 2, Section 24." *Id.* ¶ 37.

¶8        The test for determining whether a common law offense is the antecedent of a modern offense is whether the modern offense contains "comparable" or "substantially similar" elements to the common law offense. *Id.* ¶¶ 10-11; *see also Sulavka v. State*, 223 Ariz. 208, ¶ 9, 221 P.3d 1022, 1024 (App. 2009). Importantly, the two offenses do not need to be "identical, or [even] nearly so," but rather must share a "fundamental character." *Crowell v. Jejna*, 215 Ariz. 534, ¶¶ 16, 22, 161 P.3d 577, 581-83 (App. 2007).

¶9        Unlawful imprisonment is committed by knowingly "restrict[ing] a person's movements without consent, without legal authority, and in a manner which interferes substantially with such person's liberty, by either moving such person from one place to another or by confining such person." A.R.S. §§ 13-1303(A),

13-1301(2). At common law, false imprisonment required "[t]he detention of the person" and "[t]he unlawfulness of such detention." 3 William Blackstone, *Commentaries* \*127; 4 Blackstone, *Commentaries* \*218; *see also* William C. Robinson, *Elementary Law* § 219 (1882) ("False imprisonment is the unlawful detention of the person of another."); 19 *Cyclopedia of Law and Procedure* 376 (William Mack, ed., 1905) ("The gist of [false imprisonment] is the actual and unlawful restraint or detention of one person against his will by another.").

**¶10** Unlawful imprisonment and common law false imprisonment are clearly "substantially similar" offenses, *Derendal*, 209 Ariz. 416, ¶¶ 10, 39, 104 P.3d at 150, 156, and share the "fundamental character" of prohibiting the unlawful detention, or restriction, of another person's movement, *Crowell*, 215 Ariz. 534, ¶¶ 16, 22, 161 P.3d at 581-83. We therefore conclude that common law false imprisonment is the direct antecedent of unlawful imprisonment pursuant to § 13-1303. *See Derendal*, 209 Ariz. 416, ¶¶ 10, 39, 104 P.3d at 150, 156.

**¶11** The state, however, argues the offenses are not comparable because false imprisonment at common law was a misdemeanor, but unlawful imprisonment is a felony "unless the victim is released voluntarily by the defendant without physical injury in a safe place before arrest in which case it is a class 1 misdemeanor." § 13-1303(C). Thus, the state concludes, "the common law antecedent for our felony was a misdemeanor, while our misdemeanor is different from the common law antecedent because it requires additional facts to become a misdemeanor."

**¶12** The state's argument does not undermine our conclusion that the fundamental character of unlawful imprisonment is the same now as at common law. The analysis of whether the common law offense is the antecedent of the modern offense, is whether "the modern offense contains *elements* comparable to those found in the common law offense." *Derendal*, 209 Ariz. 416, ¶ 10, 104 P.3d at 150 (emphasis added). And whether the victim was safely released is not an element of unlawful imprisonment, but a mitigating factor the defendant bears the burden of proving. *State v. Eagle*, 196 Ariz. 188, ¶¶ 9-11, 994 P.2d

395, 397-98 (2000) (mitigating factors affecting classification not statutory element of crime; safe release of victim not element of unlawful imprisonment); *see also* § 13-1303(C). The state has not cited any authority, nor have we found any, supporting the proposition that courts must additionally compare the classification of the modern and common law offense, as well. Because the statutory elements of unlawful imprisonment are substantially similar to those of common law false imprisonment, we reject the state's argument.

**¶13** We next turn to whether common law false imprisonment was a jury-eligible offense at common law. *Derendal*, 209 Ariz. 416, ¶ 36, 104 P.3d at 156. Kaniowsky argues that because false imprisonment was an "indictable" offense at common law, it required a jury trial. *See Urs*, 201 Ariz. 71, n.3, 31 P.3d at 847 n.3 ("'Indictable offenses' at common law were jury-eligible crimes."); *see also District of Columbia v. Colts*, 282 U.S. 63, 73 (1930). The state, however, argues that, contrary to *Urs* and *Colts*, "indictable" does not indicate whether an offense was jury-eligible, only that it was "cognizable as a crime."

**¶14** The state contends that because misdemeanors, such as false imprisonment, could be indictable at common law, and misdemeanors were sometimes handled summarily by a judge without a jury trial, we cannot rely on the fact that false imprisonment was "indictable" to determine whether it was jury-eligible. It relies on Felix Frankfurter & Thomas G. Corcoran, *Petty Federal Offenses and The Constitutional Guaranty of Trial by Jury,* 39 Harv. L. Rev. 917, 937-68 (1926), which discussed the numerous offenses at common law that were tried to a court without a jury.

**¶15** At one time, all offenses at common law required a jury trial. *Schick v. United States*, 195 U.S. 65, 80 (1904) (Harlan, J., dissenting); *see also* Frankfurter & Corcoran, *supra*, 923-24 ("To the Englishman of the fourteenth century . . . it had already become an 'ancient prerogative' to have twelve laymen stand between him and the vengeance of the king in a criminal prosecution of any kind, whether the charge were tippling at the inn or murder."); 4 Blackstone, *Commentaries* \*280 (common law "is a stranger to"

summary proceedings); William H. MacNamara, *Paley's Law and Practice of Summary Convictions* 3-4 (6th ed., 1879). Offenses were divided into three classes: treason (which was also the only crime in its class), felonies, and misdemeanors. Robinson, *supra*, §§ 394-97; *see also* 1 William L. Clark & William L. Marshall, *A Treatise on the Law of Crimes* 9 (1900). "The common law felonies were murder, manslaughter, rape, sodomy, robbery, larceny, arson, burglary, and . . . mayhem." Clark & Marshall, *supra*, 12. All other crimes were misdemeanors. *Id.* at 17; *see also* Robinson, *supra*, § 397.

¶16 Misdemeanors were further classified into two categories: "(1) Those which were of a heinous nature and which might therefore be punished corporally, and (2) those which were not heinous." *State v. Kelly*, 15 N.W.2d 554, 564 (Minn. 1944). False imprisonment fell into the first category, as it was considered a "heinous public crime." 3 Blackstone, *Commentaries* *127; 4 Blackstone, *Commentaries* *218 ("the law . . . demands public vengeance for the breach of the king's peace, for the loss which the state sustains by the confinement of one of its members, and for the infringement of the good order of society"). Misdemeanors in the latter category—those that were not "heinous"—were considered "petty." *Kelly*, 15 N.W.2d at 564; *see also State v. Lytle*, 51 S.E. 66, 68 (N.C. 1905); 22 *The American and English Encyclopaedia of Law* 760 n.2 (David S. Garland & Lucius P. McGehee eds., 2nd ed., 1902) ("petit misdemeanors" were "trivial breaches of the peace" generally "merit[ing] no higher punishment than three dollars").

¶17 In the interest of judicial efficiency, English law began allowing for petty misdemeanors, arising from legislative enactments, to be handled summarily without an indictment or jury trial. *Schick*, 195 U.S. at 80 (Harlan, J. dissenting) (summary proceedings for petty offenses authorized by "an act of Parliament" and were exceptions to "rule at common law that all crimes must be tried by a jury"); *see also Duncan v. Louisiana*, 391 U.S. 145, 159 (1968) ("So-called petty offenses were tried without juries both in England and in the Colonies."); *see also Colts*, 282 U.S. at 72-73; *Callan v. Wilson*, 127 U.S. 540, 555-57 (1888); Pendleton Howard, *The Rise of Summary Jurisdiction in English Criminal Law Administration*, 19 Cal. L. Rev. 486, 487 n.4 (1931); Frankfurter & Corcoran, *supra*,

925-26; 4 Blackstone, *Commentaries* \*281, \*310-11; MacNamara, *supra*, 50 (offenses subject to summary proceedings "must be the subject of a special law"). Examples of these petty offenses include "common swearing, drunkenness, vagrancy [and] idleness." 4 Blackstone, *Commentaries* \*281; *see also* Frankfurter & Corcoran, *supra*, 928-29. Common law offenses which were indictable, however, continued to require jury trials. *Callan*, 127 U.S. at 555-56; *see also Colts*, 282 U.S. at 73; *see also* Howard, *supra*, 487; 4 Blackstone, *Commentaries* \*283 (offenses not subject to summary proceedings "fall . . . under the general rule, and can only be convicted by indictment"), \*350 (if defendant pled not guilty to indictment, sheriff required to assemble jury to hear case).

¶18       The state, therefore, is correct that some misdemeanors at common law were handled summarily without a jury, while other misdemeanors required a trial by jury. Contrary to the state's contention, however, "indictment" is a term of art that is crucial to understanding the procedures afforded a defendant charged with a particular offense. Howard, *supra*, 487 ("Crimes are classified as non-indictable and indictable, a practical distinction based upon the mode of trial."). Non-indictable, or petty, offenses could be heard without a jury, while indictable offenses required a jury trial. *See Colts*, 282 U.S. at 73 (distinguishing between petty offenses triable without a jury and those "indictable at common law" requiring jury trial); *District of Columbia v. Clawans*, 300 U.S. 617, 624-25 (1937) (right to jury trial at common law turned on whether offense "indictable at common law" or petty offense); Howard, *supra*, 487 (distinguishing between "those offenses which can only be dealt with summarily, and those indictable offenses which cannot, under any circumstances, be disposed of except before a judge and jury"); *see also* Pendleton Howard, *Criminal Prosecution in England. I. Police Prosecutions*, 29 Colum. L. Rev. 715, 721 n.13 (1929) (At common law, non-indictable, petty offenses tried without juries, while indictable offenses "triable only before juries."). Because false imprisonment was a "heinous public crime" requiring an indictment, a defendant charged with that offense was therefore entitled to a jury trial. 3 Blackstone, *Commentaries* \*127; 4 Blackstone, Commentaries \*218; *see also* 7 *The American and English Encyclopaedia*

*of Law* 785 (David S. Garland & Lucius P. McGehee eds., 2nd ed., 1899).

**¶19**         Historical evidence further shows that defendants who were in fact indicted for false imprisonment in England and its colonies were afforded a trial by jury. *See Old Baily Proceedings*, London Lives 1690-1800, LMSMPS506810176 (June 1778) (noting jury found defendant guilty of false imprisonment), *available at* http://www.londonlives.org/browse.jsp?div=LMSMPS50681PS506 810176; *see also R. v. Aga Kurboolie Mahomed*, (1843) 18 Eng. Rep. 459 (Sup. Ct. Calcutta) (same), *available at* http://www.commonlii.org/uk/cases/EngR/1843/850.pdf; *R. v. Birnie*, (1832) 172 Eng. Rep. 941 (K.B.) (same), *available at* http://www.commonlii.org/uk/cases/EngR/1832/448.pdf; *R. v. Osmer*, (1804) 102 Eng. Rep. 1086 (K.B.) (same), *available at* http://www.commonlii.org/uk/cases/EngR/1804/262.pdf; 4 Blackstone *362-64 ("if the jury find[s the defendant] guilty, he is then said to be convicted"; discussing punishment of persons "convicted" of false imprisonment). More recently, in relative terms, a defendant in Pennsylvania was granted a jury trial after being indicted of common law false imprisonment. *Commonwealth v. Brewer*, 167 A. 386, 386, 388-89 (Pa. Super. Ct. 1933); *see also Smith v. State*, 23 N.W. 879, 880, 883-84 (Wis. 1885) (defendant convicted by jury of common law false imprisonment and not state's statutory false imprisonment).

**¶20**         Many of the cases and treatises cited in the preceding paragraphs were decided or published many years before Arizona became a state in 1912. But we have not found any authority indicating that the common law requirement of a jury trial had changed between the time of these cases and treatises and Arizona's statehood. Accordingly, we conclude they remain good authority for the proposition that false imprisonment was jury-eligible at common law when Arizona became a state. *See Derendal*, 209 Ariz. 416, ¶ 36, 104 P.3d at 156 (we determine if crime "has a common law antecedent that guaranteed a right to trial by jury at the time of Arizona statehood").

**¶21**         False imprisonment was an indictable, jury-eligible offense at common law. *See Bosworth v. Anagnost*, 234 Ariz. 453,

¶¶ 7-8, 323 P.3d 736, 738-39 (App. 2014) (citing three cases from Old Bailey Courthouse as sufficient evidence shoplifting afforded jury trial at common law).  Consequently, Kaniowsky is entitled to a jury trial on the five false imprisonment charges as a matter of law. *See Derendal*, 209 Ariz. 416, ¶ 36, 104 P.3d at 156.  The superior court therefore abused its discretion in denying Kaniowsky relief in his special action requesting a jury trial.  *See Merlina,* 208 Ariz. 1, ¶ 6, 90 P.3d at 204; *see also Wall,* 212 Ariz. 1, ¶ 12, 126 P.3d at 150.

## Disposition

¶22        For the foregoing reasons, the trial court's order denying Kaniowsky's request for a jury trial is vacated and this case is remanded for further proceedings consistent with this opinion.